**Aldridge CURRIE, Petitioner—
Appellant,**

v.

**Darral G. ADAMS, Respondent—
Appellee.**

No. 04–15772.

United States Court of Appeals,
Ninth Circuit.

Argued & Submitted July 11, 2005.

Decided Sept. 12, 2005.

Barry L. Morris, Esq., Hayward, CA, for Petitioner–Appellant.

Aldridge Currie, Crescent City, CA, pro se.

Martin S. Kaye, Esq., AGCA—Office of the California Attorney General, San Francisco, CA, for Respondent–Appellee.

Before: THOMAS, SILVERMAN, and CLIFTON, Circuit Judges.

## MEMORANDUM *

Aldridge Currie appeals the district court's order denying his 28 U.S.C. § 2254 petition for a writ of habeas corpus. During jury selection prior to his state court trial Currie alleged that race motivated the prosecutor's peremptory strikes against three African–American women in the jury venire in violation of *People v. Wheeler*, 22 Cal.3d 258, 148 Cal.Rptr. 890, 583 P.2d 748 (1978), the "California analogue" to *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).[1] The trial court determined that with respect to each strike Currie established a prima facie case of purposeful discrimination, but ultimately concluded that the race-neutral justifications proffered by the prosecutor were genuine and denied Currie's motions. The California Court of Appeal affirmed, the California Supreme Court denied review, and the district court denied Currie's petition for writ of habeas corpus. We conclude that with respect to Juror 210, the California Court of Appeal's conclusion that the prosecutor did not engage in purposeful discrimination[2] during jury selec-

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. *Lewis v. Lewis*, 321 F.3d 824, 827 (9th Cir. 2003). Although Currie initially brought his motions pursuant to *Wheeler*, "*Batson's* federal constitutional standards control our disposition of this case." *Kesser v. Cambra*, 392 F.3d 327, 333 (9th Cir.2004).

2. Purposeful discrimination is not limited to racial animus, but includes any attempt to remove a juror on the basis of a protected characteristic such as race or gender. *See Miller–El v. Dretke*, —— U.S. ——, ——, 125 S.Ct. 2317, 2343, 162 L.Ed.2d 196 (2005) (Breyer, J., concurring) (expressing concern with the prevalence of jury selection software that analyzes prospective jurors based on protected characteristics). Here, all three African–American women in the venire were struck by the prosecutor. No matter the motivation, whenever a juror is targeted based on a protected characteristic(s), "the very in-

tion was an unreasonable determination of the facts in light of the evidence presented at the state trial proceedings. Accordingly, we reverse and remand with instructions to grant the petition.

Because Currie does not introduce any new evidence in federal court, but instead challenges the state court's findings based entirely on the state court record,[3] the appeal before us is governed by § 2254(d)(2).[4] Accordingly, before we can grant Currie's petition, "we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record." *Taylor v. Maddox,* 366 F.3d 992, 1000 (9th Cir.2004). Although this standard of review is highly deferential and will only be satisfied in rare cases, deference does not preclude relief. *See Miller–El v. Cockrell,* 537 U.S. 322, 340, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003); *Taylor,* 366 F.3d at 1000.

In determining whether a contested peremptory challenge is racially motivated in violation of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), a trial court must apply a three-prong analysis. *See Miller–El v. Dretke,* —— U.S. ——, —— – ——, 125 S.Ct. 2317, 2324–25, 162 L.Ed.2d 196 (2005). First, the defendant must make a prima facie showing that the prosecutor exercised the peremptory challenge on the basis of race. Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the juror in question. To survive step two, the prosecutor need not articulate an explanation that is persuasive or even plausible, so long as the proffered reason is race-neutral. *See Purkett v. Elem,* 514 U.S. 765, 768, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) (explaining that "a 'legitimate reason' is not a reason that makes sense, but a reason that does not deny equal protection"). Assuming the prosecutor satisfies his relatively trivial burden of production, the trial court must then assess the prosecutor's credibility to determine if the reason(s) he proffered genuinely motivated him to strike the juror. *Id.* at 768–69, 115 S.Ct. 1769. At this stage in the analysis, *Batson* permits the defendant to rely on all relevant circumstances to challenge the prosecutor's credibility because, as the *Miller–El* Court recently explained, if any facially neutral reason sufficed to answer a *Batson* challenge, *Batson* would essentially be meaningless. 125 S.Ct. at 2325.

This does not mean, as the State argues, that the prosecutor is entitled to open up the record to argue on appeal that there were other considerations, in addition to the ones he articulated at trial, that motivated his strike. To the contrary, once a defendant has established a prima facie case of purposeful discrimination, as Currie did here, the prosecutor is on notice that he "has got to state his reasons as best he can and stand or fall on the plausi-

---

tegrity of the courts is jeopardized," *Miller–El v. Dretke,* 125 S.Ct. at 2324, harming "litigants, the community, and the individual jurors who are wrongfully excluded from participation in the judicial process." *J.E.B. v. Ala. ex rel. T.B.,* 511 U.S. 127, 140, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994)

**3.** *See Miller–El v. Dretke,* —— U.S. ——, —— n. 2, 125 S.Ct. 2317, 2326 n. 2, 162 L.Ed.2d 196 (2005) ("There can be no question that

the transcript of voir dire, recording the evidence on which [Currie] bases his arguments and on which we base our result, was before the state courts.").

**4.** Only after surviving this intrinsic review, are the state court's factual findings "dressed in a presumption of correctness" pursuant to § 2554(e)(1). *See Taylor v. Maddox,* 366 F.3d 992, 1000 (9th Cir.2004).

bility of the reasons he gives.... If the stated reason does not hold up, its pretextual significance does not fade because a trial judge, or an appeals court, can image a reason that might not have been shown up as false." *Id.* at 2332; *see Turner v. Marshall,* 121 F.3d 1248, 1253 (9th Cir. 1997) (explaining that while it might have been possible for the prosecutor to articulate reasons that would have withstood scrutiny, because under *Batson* the prosecutor is charged with clearly and precisely articulating the reasons motivating the strike, the reasons the prosecutor proffered when challenged are the only reasons the court reviews).

During the state trial proceeding, the prosecutor articulated only one reason for striking Juror 210, despite being prompted by the trial court for additional reasons. The prosecutor repeatedly insisted that the one and only reason he struck Juror 210 was because "she was undecided on the death penalty." Upon questioning by the trial court, he simply opined that "there [were] other people with stronger attitudes towards the death penalty" that he would rather have on the panel.

Although the proffered reason was facially neutral, we conclude that an appellate panel could not reasonably conclude that the prosecutor was genuinely motivated by Juror 210's position on the death

penalty when he struck her from the jury. While an appellate court is not in an ideal position to assess the prosecutor's credibility, it should "use the trial court's findings and the evidence on the record to evaluate the support on the record for the prosecutor's reasons and credibility, and to compare the struck and empaneled jurors" [5] to assess whether the prosecutor's proffered justifications were pretextual. *Lewis,* 321 F.3d at 832 (describing comparative juror analysis as "a well-established tool for exploring the possibility that facially race-neutral reasons are a pretext for discrimination") (citations omitted); *see Miller–El v. Dretke,* 125 S.Ct. at 2329 (explaining that while a proffered explanation may appear facially neutral, "its plausibility [will be] severely undercut by the prosecution's failure to object to other panel members who express[ ] views much like [the struck juror's]").[6]

Based on a review of the state court proceedings, it is unreasonable to conclude that the prosecutor was genuinely motivated to strike Juror 210 because of her views on the death penalty. Although Juror 210 indicated she was "undecided" on the death penalty in the questionnaire she completed prior to voir dire, on that same questionnaire she stated that she thought the death penalty was appropriate for "se-

---

**5.** Notably, the prosecutor engaged in a comparative analysis in the state trial court proceeding when he attempted to justify his decision to strike Juror 210 by comparing her views on the death penalty with other jurors in the venire. *See Burks v. Borg,* 27 F.3d 1424, 1428 (9th Cir.1994) (concluding that "the *Batson* issue was clearly fought along comparative lines in the trial court" where the prosecutor justified his challenges on comparative grounds).

**6.** Contrary to the suggestion made in the dissent, in a habeas proceeding we review, and owe deference to, the last reasoned decision of the state court, which in this case was

rendered by the California Court of Appeal, not the trial court. While we agree that the trial court is in a better position to evaluate the credibility of the prosecutor's explanation, it is clearly not the law that the trial court has the last word and that its decision is not subject to review. If the trial court had other reasons to support its denial of Currie's motion, it should have put them on the record, so that the state appellate court could have cited and relied upon them. Instead, the state appellate court provided a justification which, notably, the dissent does not try to defend, and which does not withstand scrutiny, *even under the deferential standard of review.*

rial murders," and "unhappy, mentally ill people who can't adjust to living," and should always be imposed for "multiple killings, rape and drug deals." Furthermore, when asked by the court if she could impose the death penalty in Currie's case, she responded simply, "Could I? Yeah." Despite her openness to the death penalty in a variety of contexts and her unequivocal statement that she could impose the death penalty under the facts of this case, the prosecutor claimed to have struck her solely because she was not strong enough on the death penalty. Yet, if the prosecutor had been truly troubled by Juror's 210 comment on her questionnaire that she was "undecided" on the death penalty, "[i]n light of [her] outspoken support for the death penalty, we expect the prosecutor would have cleared up any misunderstanding by asking further questions before getting to the point of exercising a strike." *Miller–El v. Dretke,* 125 S.Ct. at 2327. The prosecutor here, however, asked no questions before striking Juror 210. Instead he simply relied on the one-word answer in her questionnaire that was at best ambiguous, particularly in light of compelling evidence that she would be favorably disposed to the death penalty should Currie be found guilty.

Even if we were to accept that the prosecutor genuinely believed that Juror 210 was not strong on the death penalty, a comparative analysis between Juror 210 and two members of the originally empaneled jury who actually served reveals that her position on the death penalty could not

have genuinely motivated him in striking her, supporting the "conclusion that race was significant in determining who was challenged and who was not." *Id.* at 2332. While it is a rare case in which a defendant is able to sustain his burden under *Batson* of proving that the reason proffered by the prosecutor was pretextual, comparative analysis under the facts of this case provides unusually compelling evidence of pretext, because (1) the prosecutor articulated only one justification as his motivation; (2) the proffered justification was objective; and (3) the similarly situated white male jurors, Jurors 31 and 43, were members of the original panel.[7] Unlike Juror 210, Jurors 31 and 43 expressed actual opposition to the death penalty.[8] In fact, the prosecution unsuccessfully attempted to strike Juror 31 for cause based on his opposition to the death penalty. Yet, even though Juror 31 was selected as an original panel member, the prosecution never challenged him. And it is not as if the prosecutor ran out of challenges, and thus did not get around to striking Jurors 31 and 43; he began passing after exercising only four of his twenty challenges. If the prosecutor actually struck Juror 210 because he wanted individuals who were more strongly disposed to the death penalty on the jury, it is inexplicable why he passed three times in a row after exercising his fourth challenge instead of striking either Juror 31 or 43.

Instead, by retaining Jurors 31 and 43 the prosecutor rendered it highly unlikely that Currie would receive the death penal-

---

7. Although the analysis here is exceptionally clean given that the prosecutor articulated only one rationale and the similarly situated jurors were members of the original panel, a "per se rule that a defendant cannot win a *Batson* claim unless there is an exactly identical white juror would leave *Batson* inoperable; potential jurors are not products of a set of cookie cutters." *Miller–El v. Dretke,* 125 S.Ct. at 2329 n. 6.

8. Juror 43 explained that he "would have difficulty imposing the death penalty for most any case," and expressed strong reservations about the appropriateness of applying the death penalty in the context of a robbery such as the one alleged here. Juror 31 expressed even stronger opposition to the death penalty, to the point of stating he did not think he could apply it under the facts of this case.

620

ty if convicted, thereby undermining his assertion that he struck Juror 210 because her position on the death penalty was not strong enough. *See id.* at 2339 ("The prosecutors' chosen race-neutral reasons for the strikes do not hold up and are so far at odds with the evidence that pretext is the fair conclusion, indicating the very discrimination the explanations were meant to deny."). Accordingly, the Court of Appeal's determination that the prosecutor's proffered race neutral justification was not pretextual was unreasonable in light of the evidence presented in the State court proceeding. "In passing section 2254(d)(2), Congress has reminded us that we may no more uphold such a factual determination than we may set aside reasonable state-court fact-finding. When we determine that state-court fact-finding is unreasonable, therefore, we have an obligation to set those findings aside." *Taylor*, 366 F.3d at 1008.

Because the "striking of a single black juror for racial reasons violates the equal protection clause, even though other black jurors are seated, and even when there are valid reasons for the striking of some black jurors," *Turner*, 121 F.3d at 1255 n. 4, we are required to reverse the district court.[9] *See id.* at 1250 (granting petitioner's *Batson* claim, the court explained the fact that four African–Americans were empaneled was not dispositive where the prosecutor's explanation for striking a particular minority juror was not supported by the record); *cf. J.E.B.*, 511 U.S. at 142, 114 S.Ct. 1419 ("The possibility that members of both genders will get on the jury despite the intentional discrimination is besides the point. The exclusion of even one juror for impermissible reasons harms that juror and undermines public confidence in the fairness of the system.").

REVERSED and REMANDED.

SILVERMAN, Circuit Judge, dissenting.

The prosecutor said that he peremptorily struck Juror 210 because he perceived there to be more favorable prospective jurors available with respect to the issue of the death penalty. The trial judge was there; he saw and heard Juror 210 and the other prospective jurors; he elicited the prosecutor's explanation, and *then* he found counsel's explanation to be credible. Now, the majority not only calls the prosecuting attorney a liar,[1] it fails to gives deference to the trial judge's first-hand fact-finding.

The exercise of peremptory strikes is not an exact science. Although a different prosecutor might have decided to keep Juror 210 and challenge someone else, the question of *who* to strike and who *not* to strike is a judgment call. The issue is not whether the prosecutor exercised his peremptory challenges wisely, but only whether he *truthfully* explained his subjective motivation.

Unlike *Miller–El v. Dretke*, —— U.S. ——, ——–——, 125 S.Ct. 2317, 2332–34, 162 L.Ed.2d 196 (2005), there is no pattern of invidious race-based challenges here. In fact, the prosecutor did not challenge a

9. We note that the California Court of Appeal's determination that the prosecutor was genuinely motivated by the race neutral justifications he articulated for striking Juror 287 was not unreasonable. Unlike with Juror 210, the prosecutor articulated several race-neutral justifications that were supported by the record. Furthermore, a comparative analysis does not significantly undermine the persuasiveness of the prosecutor's proffered justifications, such that it calls into question the genuineness of his motive.

1. "Although the proffered reason was facially neutral, we conclude that an appellate panel could not reasonably conclude that the prosecutor was genuinely motivated by Juror 210's position on the death penalty when he struck her from the jury." Memorandum at 5–6.

different black juror. The majority finds no fault with the prosecutor's challenge of yet another black juror, Juror 287. So the question comes down to why the prosecutor challenged this one *particular* juror. He said it was because, in his subjective perception, there were other prospective jurors "with stronger attitudes towards the death penalty." The trial judge had a front-row seat to all of this and was uniquely positioned to assess Juror 210, the *other* prospective jurors, and also the honesty of the prosecutor's race-neutral explanation. 28 U.S.C. § 2254(e)(1) requires us to defer to the trial judge's finding that the prosecutor was telling the truth, absent clear and convincing evidence to the contrary. *Miller–El,* 125 S.Ct. at 2325; *U.S. v. Chinchilla,* 874 F.2d 695, 697–98 (9th Cir.1989). The record before us simply does not warrant the rejection of the trial judge's factual findings, and therefore, I respectfully dissent.