BEA, Circuit Judge,
dissenting:
Aldridge Currie has been twice tried and twice convicted for the murder of Santos Maldonado. The California Court of Appeal did not unreasonably apply “clearly established Federal law, as determined by the Supreme Court of the United States”, when it affirmed Currie’s conviction following his retrial in 2008. 28 U.S.C. § 2254(d)(1). Furthermore, the court’s decision was not “based on an unreasonable determination of the facts in light of the evidence” before it. Id. § 2254(d)(2). Accordingly, Currie’s habeas petition “shall not be granted.” Id. § 2254(d). Since federal courts are statutorily barred from granting Currie’s habeas petition, I would affirm the district court’s denial of his petition.
I.
Currie killed his drug dealer, Maldonado, on the night of July 12, 1995. That night, Currie first asked Maldonado for methamphetamine, and Maldonado offered to sell some. Currie then walked away from Maldonado for a few minutes. Currie came back with a gun and fatally shot Maldonado in the neck. According to one witness, Currie took drugs and money out of Maldonado’s pockets before fleeing the scene. According to another witness, Cur-rie appeared desperate to get drugs. Cur-rie smoked drugs that night, and according to a toxicologist there was cocaine and methamphetamine in Maldonado’s blood at the time of his death. At trial, Currie testified that he killed Maldonado because they argued about a gun that night and Currie believed that Maldonado was going to shoot him. The jury also heard that Currie had previously been convicted of possessing and transporting drugs.
II.
This appeal concerns the constitutionality of the jury selection process during Currie’s retrial in California state court. During the first round of jury selection, *615 the prosecutor struck four prospective jurors, none of whom was African American. The trial court moved on to the second round of prospective jurors. Juror Jones was a member of this second group. The trial judge questioned Juror Jones about arrests of her close family members, and Jones stated that both her brother and her cousin had been arrested for suspected drug crimes. The prosecutor struck Juror Jones from the panel. This was the first and only time that the prosecutor struck an African American juror from the jury that retried Currie. There was one other African American prospective juror in the venire, but a full jury was impaneled before the parties had a chance to question her.
Currie’s counsel raised an objection to the Jones strike based on Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and moved for a mistrial. Defense counsel told the trial judge that he did not believe the prosecutor had “any basis whatsoever” to strike Jones, other than her race. The judge stated that he was “aware that striking a single person of a minority background is sufficient for a prima facie showing if the evidence gives rise to a reasonable inference that it is based on ra[c]e rather than on nonprohi-bited grounds.” After hearing from defense counsel and the prosecutor, the trial judge concluded that based on his observation of the facts no prima facie showing of racial discrimination had been made. The judge observed that there was “a very reasonable basis” to strike someone like Juror Jones because “Jones’ brother has been prosecuted on drug cases ... [and] her cousin was prosecuted on drug cases.” The judge said he did not “believe that the prosecutor is required to take the risk that either subconsciously or during the presentation of evidence her feelings” might make her biased against Currie’s prosecutor “in light of the very close relationship she has with two people who have been prosecuted.” The judge apparently was referring to the arrests of Jones’ brother and cousin for suspected drug crimes, although it is not clear whether those arrests led to prosecutions.
After concluding that defense counsel failed to make a prima facie showing of discrimination, the trial judge next invited the prosecutor to state for the record any reasons why he struck Juror Jones. The prosecutor obliged and first agreed with the court’s reasoning as to the possible effect on Jones of her close family’s drug arrest record. Next, the prosecutor pointed out that Jones had answered “no” on a questionnaire that asked if a family member had been a defendant in a criminal matter and then answered “yes” to a question about whether one of her family members had been arrested. The prosecutor apparently considered these answers to be inconsistent, even though they are not necessarily irreconcilable since one referred to criminal prosecutions and the other referred merely to arrests. The prosecutor also pointed out that in response to a question regarding whether any of her family members “had a drug problem,” Jones had answered “yes” and written “several family members have crack before” [sic]. Finally, the prosecutor pointed out that Jones wrote on a questionnaire that she did not know what the defendant was accused of, even though the trial judge had already advised Jones and other prospective jurors that the defendant was charged with second degree murder and other crimes. The prosecutor then reemphasized that Jones had “a close relation such as a brother” potentially involved in a suspected drug crime.
The trial judge reiterated that he denied the motion based on the absence of a prima facie showing of discrimination. The judge also said that be believed that the *616 prosecutor’s stated reasons were not pre-textual. The trial proceeded. Currie was convicted, again, of second degree murder, attempted robbery, and being a felon in possession of a firearm.
Currie appealed his conviction to the California Court of Appeal. People v. Currie, No. A123708, 2011 WL 63083 (Cal. Ct. App. Jan. 10, 2011), as modified on denial of reh’g (Jan. 31, 2011). He argued that the trial court’s denial of his Batson motion violated his constitutional rights. According to Currie, the trial court applied the wrong legal standard at Batson’s first, prima facie step by supposedly requiring him to show that it was “more likely than not” that the prosecutor struck Jones because of her race. The appellate court rejected this argument because the trial judge never mentioned a “more likely than not” standard, and because the trial judge required only that Currie proffer evidence that “gives rise to a reasonable inference” that the challenged strike was motivated by race. The appellate court went on to hold that “[sjubstantial evidence supports the trial court’s stated conclusion that [Jones] was not a desirable panelist for the prosecution because she had two relatives who had been arrested for drug offenses, and that consequently, no prima facie case had been made.” Id. at *7.
Currie argued that the appellate court was obligated to undertake a comparative analysis among Jones and the seated jurors. The appellate court rejected this argument because the trial judge applied the correct legal standard during the prima facie step and explicitly found that Currie failed to show that there was a reasonable inference that the prosecutor was motivated by race. The appellate court went on to perform a comparative analysis anyway, and it concluded that “[sjubstantial evidence supports the trial court’s finding that the prosecutor did not excuse [Jones] based on her race.” Id. at *10. The appellate court affirmed Currie’s conviction. Id. at *20.
Currie filed a petition for review in the Supreme Court of California, which was denied without opinion. He filed the instant petition for writ of habeas corpus in federal district court, which raises the same Batson claim. The district court denied the habeas petition. On appeal to us, he argues that the court erred when it denied his petition.
III.
Our review of Currie’s habeas petition is limited in scope by the Antiterrorism and Effective Death Penalty Act of 1996 (“AEDPA”). Under AEDPA, a habeas petition “on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim — (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.” 28 U.S.C. § 2254(d)(1) — (2). Here, the California Court of Appeal adjudicated Currie’s Bat-son claim on the merits, and Currie raises the same Batson claim in his federal habe-as petition. AEDPA bars federal courts from granting Currie’s petition unless the California Court of Appeal unreasonably applied clearly established Federal law or based its decision on factual determinations that are unreasonable in light of the evidence before it.
IV.
A.
We are called upon to ascertain the “clearly established Federal law, as deter *617 mined by the Supreme Court of the United States” with respect to Batson challenges.
The Supreme Court of the United States explained the proper analysis for Batson claims in Johnson v. California, 545 U.S. 162, 125 S.Ct. 2410, 162 L.Ed.2d 129 (2005) [hereinafter Johnson]. In Johnson, a prosecutor struck three African American jurors. Id. at 165, 125 S.Ct. 2410. Defense counsel raised a Batson objection after the first two strikes. Id. The trial judge warned that “we are very close” to establishing a prima facie Batson case, but the judge concluded that no such case had been established because there was not a “strong likelihood” that the strikes were motivated by race. Id. The judge “simply found that [the defendant] had failed to establish a prima facie case” and did not ask the prosecutor to explain the rationale for the strikes. Id. Then, the prosecutor struck the third African American juror, and defense counsel objected again and argued that the prosecutor was engaging in “a systematic attempt to exclude African-Americans from the jury panel.” Id. The trial judge opined “that the black venire members had offered equivocal or confused answers in their written questionnaires.” The judge said “there were answers ... at least on the questionnaires thémselves [such] that the Court felt that there was sufficient basis” for the strikes. Id. at 165-66, 125 S.Ct. 2410. The judge concluded that the defendant failed to establish a prima facie case and did not ask the prosecutor for an explanation. Id. at 165-66, 125 S.Ct. 2410.
The defendant pursued a direct appeal to the Supreme Court of the United States. The Court identified the following issue and standard:
The issue in this case is narrow but important. It concerns the scope of the first of three steps this Court enumerated in Batson, which together guide trial courts’ constitutional review of peremptory strikes. Those three Batson steps should by now be familiar. First, the defendant must make out a prima facie case “by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose.” Second, once the defendant has made out a prima facie case, the “burden shifts to the State to explain adequately the racial exclusion” by offering permissible race-neutral justifications for the strikes. Third, “[i]f a race-neutral explanation is tendered, the trial court must then decide ... whether the opponent of the strike has proved purposeful racial discrimination.”
Id. at 168, 125 S.Ct. 2410 (citations omitted).
The Court rejected the standard then used by California courts at the first step of Batson, which required a defendant to show that it was “more likely than not” that the prosecutor exercised a peremptory strike based on race. Id. This standard asked too much of defendants. “Instead, a defendant satisfies the requirements of Batson’s first step by producing evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred.” Id. at 170, 125 S.Ct. 2410.
The Court applied this standard to the facts of Johnson. It noted that the state supreme court observed it was “suspicious” that three African American jurors were removed from the jury, and that the trial judge said “we are very close” to a prima facie Batson case after the prosecutor twice struck African American jurors. The Court held that “[t]hose inferences that discrimination may have occurred were sufficient to establish a prima facie.” Id. at 173, 125 S.Ct. 2410.
In reviewing habeas petitions, we have relied on the Court’s holding in Johnson to determine whether a state court deci *618 sion “involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States.” 28 U.S.C. § 2254(d)(1). For instance, in Williams v. Runnels, 432 F.3d 1102 (9th Cir. 2006), we held that the California Court of Appeal applied the wrong legal standard because it failed to recognize that the defendant’s Batson objection was “only required to raise an inference of purposeful discrimination” to pass muster at step one, id. at 1110. The prosecutor in Williams used peremptory challenges to excuse three African American jurors. Id. at 1103. The defendant objected, and the trial judge summarily concluded that the defendant failed to establish a prima facie case of discrimination. Id. at 1104. The trial judge did not explain this finding and did not ask the prosecutor to provide an explanation. Id. The California Court of Appeal affirmed the trial court. Id. It held that “from all the circumstances of the case,” the defendant had not shown “a strong likelihood that such persons are being challenged because of their group association.” Id. Thus, the state appellate court plainly applied the wrong legal standard when it reviewed the defendant’s Batson claim. In light of this critical flaw, we noted that “where the state court used the ‘strong likelihood’ standard for reviewing a Batson claim, the state court’s findings are not entitled to deference and our review is de novo.” Id. at 1105 (citing Paulino v. Castro, 371 F.3d 1083, 1090 (9th Cir. 2004)). Applying de novo review, we determined for ourselves whether the defendant had raised an inference of purposeful discrimination at step one of Batson. We found that the prosecutor’s use of peremptory strikes against three African American jurors raised such an inference, and we did not believe that this inference was refuted by the state appellate court’s post-hoc rationalization that the trial court record “could have” supported race-neutral reasons for the strikes. Id. at 1110. The state appellate court was confined to hypothesizing potential race-neutral reasons to justify the strike because the trial judge denied the Batson motion at step one without explanation.
We revisited Batson’s step one analysis in Johnson v. Finn, 665 F.3d 1063 (9th Cir. 2011) [hereinafter Finn]. A state prosecutor exercised peremptory strikes against three African American jurors, and the defendants objected on Batson grounds. Id. at 1066. The trial judge found that the defendants failed to make out a prima facie case of discrimination. Id. The California Court of Appeal affirmed the trial court. Id. at 1068. The defendants raised the Batson claim in a federal habeas petition. Id. In reviewing the petition, we first analyzed whether the California Court of Appeal applied the proper legal standard when it adjudicated the Batson claim on the merits. Id.
As in Williams, we again held that the state court applied the wrong legal standard. Id. In applying step one of Batson, the California Court of Appeal relied on People v. Box, 23 Cal.4th 1153, 99 Cal.Rptr.2d 69, 5 P.3d 130 (2000). Box stated that “in California, a ‘strong likelihood’ means a ‘reasonable inference.’” Id. at 1188 n. 7, 99 Cal.Rptr.2d 69, 5 P.3d 130. By relying on Box, the state appellate court in Finn failed to apply the legal standard followed by the United States Supreme Court in Johnson. In Johnson, the Court explicitly rejected California’s “strong likelihood” standard at Batson step one. Johnson, 545 U.S. at 166, 125 S.Ct. 2410. In reviewing the proceedings at issue in Finn, we held that “[a] state court that equates a correct standard with an incorrect standard cannot be applying the correct standard in the manner required by *619 law.” Finn, 665 F.3d at 1068. We went on to note that there was “strong! ] evidence” that the state appellate court applied the incorrect “strong likelihood” standard. Id. This “evidence” was that the state appellate court wrote that it would affirm the trial judge’s step one Batson ruling so long as “there are grounds upon which a prosecutor could reasonably have premised a challenge.” Id. This statement was in tension with Williams v. Runnels, in. which we reviewed a Batson claim de novo and opined that “to rebut an inference of discriminatory purpose based on statistical disparity, the ‘other relevant circumstances’ must do more than indicate that the record would support race-neutral reasons for the questioned challenges.” Williams, 432 F.3d at 1108.
Because the state appellate court applied the wrong legal standard in Finn, we proceeded to review the Batson claim de novo. Finn, 665 F.3d at 1070. We wrote that “[t]he fact that three of the prosecution’s peremptory challenges were exercised against the only three African-Americans in the jury pool is enough to establish a prima facie case of racial discrimination.” Id. (internal quotation marks omitted). We held, on de novo review, that the defendants did make a prima facie showing of racial discrimination at Batson step one. Id. at 1071.
Before proceeding to analyze the California Court of Appeal decision in this case, it is worth summarizing the foregoing authorities: In Johnson, the Supreme Court rejected California’s “strong likelihood” standard at Batson step one. “Instead, a defendant satisfies the requirements of Batson’s first step by producing evidence sufficient to permit the trial judge to draw an inference that discrimination occurred.” Johnson, 545 U.S. at 170, 125 S.Ct. 2410. In Williams, we concluded that the state appellate court misapplied clearly established Federal law because it used the “strong likelihood” standard at Batson step one. Williams, 432 F.3d at 1105. We proceeded to analyze the Batson claim de novo. Id. Similarly, in Finn, we concluded that the state appellate court misapplied clearly established Federal law because it relied on a California case that equated the “reasonable inference standard” with the incorrect “strong likelihood” standard. Finn, 665 F.3d at 1068. Thus, we proceeded to analyze that Batson claim de novo as well. Id.
B.
Here, the California Court of Appeal’s adjudication of Currie’s Batson claim did not “resultf ] in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law;' as determined by the Supreme Court of the United States.” 28 U.S.C. § 2254(d)(1). Unlike the proceedings wé reviewed in Williams and Finn, here there is “strong evidence” that the state court was aware of, and applied, the inference standard from Johnson v. California. This evidence principally consists of the fact that the state appellate court cited, quoted, and discussed Johnson when it adjudicated Currie’s step one Batson claim. The appellate court noted that “[i]n Johnson, the high court clarified that the first prong of Batson is satisfied where the record supports an ‘inference’ of discrimination, and rejected California decisions requiring proof of a ‘strong likelihood’ of discrimination.” People v. Currie, No. A123708, 2011 WL 63083, at *7 (Cal. Ct. App. Jan. 10, 2011), as modified on denial of reh’g (Jan. 31, 2011). Furthermore, the appellate court observed that “[t]he trial court here was well aware of Johnson (which was decided three years before the voir dire in this case) and specifically articulated the ‘inference’ standard when ruling *620 on the [Batson] motion.” Id. This observation is supported by the record before the appellate court, which shows that the judge said he was “aware that striking a single person of a minority background is sufficient for a prima facie showing if the evidence gives rise to a reasonable inference that it is based on ra[c]e rather than on nonprohibited grounds.” These facts support only one conclusion: the California Court of Appeal reasonably applied “clearly established Federal law, as determined by the Supreme Court of the United States” when it adjudicated Currie’s step one Batson claim.
C.
My colleagues in the majority see things differently. They conclude that the California Court of Appeal violated clearly established Federal law, as determined by the Supreme Court. The majority supports this conclusion not with a Supreme Court case, but with our discussion in Finn. However, the Ninth Circuit does not speak for the Supreme Court. When we review habeas petitions subject to AEDPA, “[w]e must keep in mind that ‘only the Supreme Court’s holdings are binding on the state courts and only those holdings need be reasonably applied.’ ” Murray v. Schriro, 745 F.3d 984, 997 (9th Cir. 2014) (quoting Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003), overruled on other grounds by Lockyer v. Andrade, 538 U.S. 63, 71, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003)). “Our precedent cannot be mistaken for clearly established Supreme Court law.” Id. (citing Marshall v. Rodgers, — U.S. -, 133 S.Ct. 1446, 1450-51, 185 L.Ed.2d 540 (2013)).
The majority points to our statement in Finn that the California Court of Appeal apparently applied the wrong standard at Batson step one in part because the appellate court said it would affirm a trial court’s step one ruling “so long as ‘there are grounds upon which a prosecutor could reasonably have premised a challenge.’ ” Finn, 665 F.3d at 1068. In the present case, my colleagues point out, the California Court of Appeal quoted a California case stating that an appellate court “will affirm the ruling where the record suggests grounds upon which the prosecutor might reasonably have challenged the jurors in question.” People v. Hoyos, 41 Cal.4th 872, 900, 63 Cal.Rptr.3d 1, 162 P.3d 528 (2007). Thus, similar language appears in both the challenged decision in the present case and in the challenged decision under review in Finn. Given this shared language, my colleagues conclude that since the California Court of Appeal acted contrary to Federal law in Finn, it did so here as well.
The majority’s analysis is incorrect for three reasons.
First, Finn did not hold that the appellate court’s statement established that the court acted contrary to Federal law. There was a much bigger problem with the appellate court’s decision: it relied on People v. Box, 23 Cal.4th 1153, 99 Cal.Rptr.2d 69, 5 P.3d 130 (2000), which incorrectly conflated the “reasonable inference” standard with California’s “strong likelihood” standard. This is the primary reason in Finn why we concluded that the state court acted contrary to Federal law. By contrast, here the state trial court and the California Court of Appeal relied on the “reasonable inference” standard from Johnson. The courts did not rely on Box.
Second, Finn does not demonstrate that it is contrary to clearly established Federal law, as determined by the Supreme Court, for a state appellate court to affirm a step one Batson ruling “so long as ‘there are grounds upon which a prosecutor could reasonably have premised a challenge.’ ” Finn, 665 F.3d at 1068. Finn is not a *621 Supreme Court case, and Finn did not rely on a Supreme Court case when it criticized the appellate court’s rule statement. Instead, Finn relied on Williams v. Runnels, which is a Ninth Circuit decision.
In Williams, we reviewed a habeas petition de novo and determined that the California Court of Appeal “did not adequately protect” a defendant’s rights under the Equal Protection. Clause when it ruled on a Batson claim by focusing on “whether the [trial] record could support race-neutral grounds for the prosecutor’s peremptory challenges.” Williams, 432 F.3d at 1108. The Williams court arrived at this conclusion based on its reading of Johnson. However, Johnson itself does not spell out such a rule. Instead, the Williams court refined the general principle from Johnson into a specific legal rule that now applies to de novo review of Batson claims in the Ninth Circuit. The Williams rule is not “clearly established Federal law, as determined by the Supreme Court.” We have been repeatedly reminded by the Supreme Court not to treat our own precedent as Supreme Court law. E.g., Lopez v. Smith, — U.S. -, 135 S.Ct. 1, 4, 190 L.Ed.2d 1 (2014) (“Circuit precedent cannot refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that this Court has not announced.”). The fact that we reiterated the Williams rule in Finn does not change this analysis. We do not speak for the Supreme Court, even when we say the same thing twice.
Third, even if it were contrary to clearly established Federal law for an appellate court to pass on a Batson claim simply because it could dream up “grounds upon which a prosecutor could reasonably have premised a challenge,” Finn, 665 F.3d at 1068, that is an inaccurate description of what actually happened in Currie’s case. The California Court of Appeal did not affirm Currie’s murder conviction by imagining a possible rationale for striking Juror Jones. Instead, the appellate court examined the trial record to determine whether substantial evidence supported the trial judge’s rationale for finding that Currie failed to establish a prima facie case at Batson step one. Appellate courts typically operate this way. They review findings of fact made by trial courts for substantial evidence. Nothing about this approach is contrary to “clearly established Federal law, as determined by the Supreme Court.” My colleagues in the majority do not offer much clarity as to what, exactly, a state appellate court is allowed to do when it reviews a trial court’s Batson step one finding — other than overturn it.
In sum, the California Court of Appeal did not unreasonably apply Federal law when it adjudicated Currie’s Batson claim. The appellate court applied the standard from Johnson v. California, 545 U.S. 162, 125 S.Ct. 2410, 162 L.Ed.2d 129 (2005), and nothing in the record shows that it applied the Johnson standard unreasonably or in a manner contrary to clearly established Federal law, as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1).
y.
A.
Our review of Currie’s federal habeas petition does not end simply because the state appellate court applied the correct legal standard. We must also consider whether the California Court of Appeal’s adjudication of his Batson claim “resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.” 28 U.S.C. § 2254(d)(2). Here, the determination under review is the California appellate court’s conclusion that substantial evidence supported the tri *622 al judge’s denial of the Batson motion at step one. The appellate court had before it the voir dire transcript and the questionnaires from jury selection. It determined that “[sjubstantial evidence supports the trial court’s stated conclusion that [Jones] was not a desirable panelist for the prosecution because she had two relatives who had been arrested for drug offenses, and that consequently, no prima facie case had been made.”
In assessing the reasonableness of the appellate court’s determination, we are guided by Johnson. In Johnson, the Supreme Court held on direct appeal that a prima facie case had been made out where the prosecutor struck three African American jurors, a tactic that the state courts themselves described as “suspicious” and “very close” to a Batson violation. Johnson, 545 U.S. at 173, 125 S.Ct. 2410. The trial judge perceived the Batson claim as a close call but concluded that no prima facie case had been shown because the three African American jurors had provided “confused answers in their written questionnaires.” Id. at 165, 125 S.Ct. 2410.
Williams is also instructive. In Williams, the prosecutor struck three African American jurors. Williams, 432 F.3d at 1103. The trial judge summarily denied the defendant’s Batson motion without analysis and without seeking.an explanation from the prosecutor. Id. at 1104, 1108. We reviewed the Batson claim de novo. We noted that the trial judge’s summary handling of the motion limited our ability to determine whether any relevant circumstances undermined the inference of race discrimination. Id. at 1108. Our review of the record “fail[edj to disclose a refutation of the inference of bias” raised by striking three African American jurors. Id. at 1109. Thus, we determined that the defendant had made out a prima facie case at Batson step one. Id.
Currie’s case is different.
The People of California sought to convict Currie, himself a drug user, for murdering his drug dealer after the two got in an argument. During jury selection, the trial judge heard from Juror Jones that both her brother and her cousin had been arrested for suspected drug crimes. Soon thereafter, the prosecutor peremptorily struck Jones. This was the prosecutor’s sixth peremptory strike, and his first and only peremptory strike of an African-American juror from that venire. Currie raised a Batson objection, and the trial judge listened to Currie’s explanation of his objection. The trial judge found that no prima facie case had been made. The trial judge then explained his reasoning for the record: he believed Jones could pose a risk to the state’s prosecution of a drug user since her brother and cousin had been arrested for suspected drug crimes. In light of this, the judge did not believe that the prosecutor’s strike of Jones raised the inference that the strike was motivated by the color of Jones’ skin.
It was not unreasonable for the California Court of Appeal to conclude that the inferential support for the presence of racial animus to explain the peremptory challenge of Jones was not as strong as the evidence in Johnson, in which the trial judge observed that the prosecutor came “very close” to violating Batson by striking three African American jurors and the judge offered only a cursory explanation for finding that no prima facie case had been made. See Johnson, 545 U.S. at 165, 125 S.Ct. 2410 (“Specifically, the judge opined that the black venire members had offered equivocal or confused answers in their written questionnaires.”). By contrast, here the trial judge offered a specific reason for why striking one juror in particular, Jones, did not give rise to the inference that the prosecutor struck her be *623 cause of race. Furthermore, the facts of this case differ from Williams, in which the trial judge summarily found (without explanation) that the prosecutor’s peremptory strikes of three African Americans did not give rise to a reasonable inference of discrimination. Here, the California Court of Appeal had the benefit of the trial judge’s reasoning when it adjudicated Cur-rie’s Batson claim. In light of this, it was not unreasonable for the appellate court to find that substantial evidence supported the trial judge’s ruling.
B.
My colleagues in the majority again see things differently. They conclude that the appellate court’s finding was unreasonable in light of a comparative analysis with other jurors who were allowed to serve.
As part of this analysis, the majority writes that it is “troubling” that the prosecutor’s explanations for the strike “were largely adopted from the reasons the trial judge had already suggested, during his discussion of Batson step one.” This is a perplexing critique of the trial court’s handling of the objection. It is a good thing when trial judges explain themselves. This practice helps a great deal when appellate courts review their findings for substantial evidence. Furthermore, we explicitly noted in Williams that it was difficult to review the trial court’s step one finding because the judge simply stated, without explanation, that there was no prima facie showing of discrimination. Here, the trial judge avoided this problem by stating his reasoning for the record. It would have been unwise not to. The fact that the prosecutor later agreed with the judge’s reasoning is unremarkable. If anything, the agreement between the judge and the prosecutor is an indication that there was, in fact, a clear race-neutral justification for the strike.
The majority instead chooses to discredit and distrust the prosecutor because he agreed with the judge’s reasoning. This theory will now control how we review adjudications of Batson challenges in state courts, and it is unclear what those courts should do at step one. A judge who stays silent tempts fate, as does one who speaks. The consequences of this rule are evident here, as the majority sets aside a conviction on Batson grounds even when the trial judge observed a reason for a strike as obvious as a juror’s family’s prior drug arrest records in a drug-based murder ease.
The majority goes on to analyze other reasons that the prosecutor offered for striking Jones. The majority finds it “unreasonable” for the prosecutor to have struck Jones (in part) because her family members had drug problems. The majority points out that other, seated jurors had drug problems themselves or had relatives who had drug problems. The majority also notes that some of the seated jurors were similar to Jones because they answered some parts of the juror questionnaire the same way that she did. By choosing to emphasize these similarities, the majority opinion elides the key difference between Jones and the other jurors: only Jones had a brother and cousin who were arrested for suspected drug crimes. The majority downplays this fact and chooses to focus on others. However, “[t]he panel majority’s attempt to use a set of debatable inferences to set aside the conclusion reached by the state court does not satisfy AED-PA’s requirements for granting a writ of habeas corpus.” Rice v. Collins, 546 U.S. 333, 342, 126 S.Ct. 969, 163 L.Ed.2d 824 (2006).
VI.
The majority today tells the People of California that they must thrice try Currie *624 for murder, or set him free. I cannot join them in this task. The state appellate court’s adjudication of Currie’s Batson claim did not “result[ ] in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States”, and it did not “result[] in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.” 28 U.S.C. § 2254(d)(1)-(2). His habeas petition “shall not be granted.” Id. Accordingly, I respectfully dissent from the majority’s decision to grant it.