(Slip Opinion)     OCTOBER TERM, 2005     1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## RICE, WARDEN, ET AL. *v.* COLLINS

CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 04–52.   Argued December 5, 2005—Decided January 18, 2006

After the prosecutor struck a young, African-American woman, Juror 16, from the panel at respondent Collins' state-court drug trial, Collins objected that the strike was made on account of Juror 16's race.  As race-neutral explanations for the strike, the prosecutor said that Juror 16 had rolled her eyes in response to a question from the court; that she was young and might be too tolerant of a drug crime; and that she was single and lacked ties to the community.  In rejecting Collins' challenge, the trial court declared that it did not observe the complained-of demeanor by Juror 16, but noted that she was youthful, as was a white male juror also dismissed by peremptory challenge, and stated it would give the prosecutor "the benefit of the doubt."  The prosecutor had also referred to Juror 16's gender in explaining the strike, but the trial court disallowed any reliance on that ground.  The California Court of Appeal upheld the conviction and the trial court's ruling on the peremptory challenge, finding that the prosecutor permissibly excluded Juror 16 based on her youth.  Even if youth was not a legitimate reason to exercise a peremptory challenge, said the court, Juror 16's demeanor supported the strike; nothing in the record suggested the trial court failed to conduct a searching inquiry of the prosecutor's reasons for striking her.  The California Supreme Court denied review.  The Federal District Court dismissed Collins' habeas petition with prejudice, but the Ninth Circuit reversed and remanded, concluding that, under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the State Court of Appeal's affirmance was based on an unreasonable factual determination in light of the evidence presented at trial.

*Held:* The Ninth Circuit's attempt to use a set of debatable inferences to set aside the state court's conclusion does not satisfy AEDPA's re-

quirements for granting habeas relief.  Pp. 3–8.

(a) Under *Batson* v. *Kentucky,* 476 U. S. 79, 98, a defendant's chal-
lenge to a peremptory strike allegedly based on race requires, *inter
alia*, that the trial court determine whether the defendant has car-
ried his burden of proving purposeful discrimination.  This involves
evaluating "the persuasiveness of the [prosecutor's proffered] justifi-
cation" for the strike, but "the ultimate burden of persuasion regard-
ing racial motivation rests with, and never shifts from, the opponent
of the strike."  *Purkett* v. *Elem*, 514 U. S. 765, 768.  Because, under
AEDPA, a federal habeas court must find the state-court conclusion
"an unreasonable determination of the facts in light of the evidence
presented in the State court proceeding," 28 U. S. C. §2254(d)(2), a
federal court can only grant Collins' petition if it was unreasonable to
credit the prosecutor's race-neutral explanations for the *Batson* chal-
lenge.  Pp. 3–4.

(b) Though the Ninth Circuit recited the proper standard of review,
it improperly substituted its evaluation of the record for that of the
state trial court, which, under §2254(d)(2), did not make an unrea-
sonable determination of the facts in light of the evidence presented.
Noting that the trial court had not witnessed Juror 16's purported
eye rolling, the Ninth Circuit concluded that no reasonable factfinder
could have accepted the prosecutor's rendition of the alleged incident
because the prosecutor had completely undermined her own credibil-
ity based on three considerations: her erroneous statement that an-
other prospective African-American juror, Juror 19, was "young"
when, in fact, she was a grandmother; the prosecutor's improper at-
tempt to use gender as a basis for exclusion; and the Court of Ap-
peals' skepticism toward the prosecutor's explanation that she struck
Juror 16 in part because of her youth and lack of ties to the commu-
nity.  As to the first reason, because the prosecutor's reference to Ju-
ror 19's youth occurred during a discussion of three prospective ju-
rors, two of whom were, indeed, young, it is quite plausible that the
prosecutor simply misspoke.  It is a tenuous inference to say that an
accidental reference with respect to one juror undermines the prose-
cutor's credibility with respect to another.  Second, the Ninth Circuit
assigned the prosecutor's reference to Juror 16's gender more weight
than it can bear, given that the prosecutor provided a number of
other permissible and plausible race-neutral reasons for excluding
her.  Collins provides no argument why this matter demonstrates
that a reasonable factfinder must conclude the prosecutor lied about
the eye rolling and struck Juror 16 based on her race.  Finally, even if
the prosecutor's concerns about Juror 16's youth and lack of commu-
nity ties were overly cautious, her wariness could be seen as race
neutral, for she used a peremptory strike on a white male juror, Ju-

Syllabus

ror 6, with the same characteristics. Viewing the foregoing concerns together, the most generous reading would suggest only that the trial court had reason to question the prosecutor's credibility regarding Juror 16's alleged improper demeanor. That does not, however, compel the conclusion that the trial court had no permissible alternative but to reject the prosecutor's race-neutral justifications and conclude Collins had shown a *Batson* violation. Reasonable minds reviewing the record might disagree about the prosecutor's credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination. Pp. 4–8.

365 F. 3d 667, reversed and remanded.

KENNEDY, J., delivered the opinion for a unanimous Court. BREYER, J., filed a concurring opinion, in which SOUTER, J., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 04–52

BERTRAM RICE, WARDEN, ET AL., PETITIONERS *v.*
STEVEN MARTELL COLLINS

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE NINTH CIRCUIT

[January 18, 2006]

JUSTICE KENNEDY delivered the opinion of the Court

Concerned that, in this habeas corpus case, a federal court set aside reasonable state-court determinations of fact in favor of its own debatable interpretation of the record, we granted certiorari. Our review confirms that the Court of Appeals for the Ninth Circuit erred, misapplying settled rules that limit its role and authority.

I

After a 4-day trial in the Superior Court of California for the County of Los Angeles, a jury convicted Steven Martell Collins on one count of possessing cocaine with intent to distribute. The conviction was all the more serious because it subjected him to California's three strikes rule for sentencing. The question at issue in this federal habeas corpus action, however, is the California courts' rejection of Collins' argument that the prosecutor struck a young, African-American woman, Juror 16, from the panel on account of her race. A second African-American juror was also the subject of a peremptory strike, and although Collins challenged that strike in the trial court, on appeal he objected only to the excusal of Juror 16.

Even prior to this Court's decision in *Batson* v. *Kentucky,* 476 U. S. 79 (1986), California courts barred peremptory challenges to jurors based on race. *People* v. *Wheeler*, 22 Cal. 3d 258, 583 P. 2d 748 (1978). Although our recent decision in *Johnson* v. *California*, 545 U. S. ___ (2005), disapproved of the manner in which *Wheeler* and *Batson* were implemented in some California cases, the state courts in this case used the correct analytical framework in considering and ruling upon the objection to the prosecutorial strike.

As race-neutral explanations for striking Juror 16, the prosecutor said that Juror 16 had rolled her eyes in response to a question from the court; that Juror 16 was young and might be too tolerant of a drug crime; and that Juror 16 was single and lacked ties to the community. A further, more troubling part of the prosecutor's unorganized explanation was her reference to Juror 16's gender. The trial court, correctly, disallowed any reliance on that ground. The trial court, furthermore, which had the benefit of observing the prosecutor firsthand over the course of the proceedings, rejected Collins' challenge.

> "With regard to 016, the court, frankly, did not observe the demeanor of Ms. 016 that was complained of by the District Attorney; however, Ms. 016 was a youthful person, as was [a white male juror the prosecutor also dismissed by peremptory challenge]. And one or more prospective jurors also. The Court is prepared to give the District Attorney the benefit of the doubt as to Ms. 016." 2 App. 14–15.

The California Court of Appeal upheld the conviction and the trial court's ruling on the peremptory challenge. *People* v. *Collins*, No. B106939 (Dec. 12, 1997), App. to Pet. for Cert. 112–117. In its view, youth was a legitimate reason to exercise a peremptory challenge; and, even if it were not, Juror 16's demeanor also supported the strike.

*Id.*, at 116. According to its review of the record, nothing suggested the trial court failed to conduct a searching inquiry of the prosecutor's reasons for striking Juror 16. *Id.*, at 116–117. The appeals court thus upheld the trial court's ultimate conclusion to credit the prosecutor. *Ibid.* Without comment, the Supreme Court of California denied Collins' petition for review. *Id.*, at 96.

Collins sought collateral relief on this claim in federal court. The United States District Court for the Central District of California dismissed with prejudice Collins' petition for a writ of habeas corpus. *Id.*, at 91. A divided panel of the Court of Appeals for the Ninth Circuit reversed and remanded with instructions to grant the petition. 348 F. 3d 1082 (2003), amended and superseded by 365 F. 3d 667 (2004). Noting that the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governed Collins' petition, the panel majority concluded that it was an unreasonable factual determination to credit the prosecutor's race-neutral reasons for striking Juror 16. *Id.*, at 679. Judge Hall dissented, *id.*, at 687–691; and later, over the dissent of five judges, the Court of Appeals declined to rehear the case en banc, *id.*, at 670–673. Though it recited the proper standard of review, the panel majority improperly substituted its evaluation of the record for that of the state trial court. We granted the petition for certiorari, 545 U. S. \_\_\_ (2005), and now reverse.

II

A defendant's *Batson* challenge to a peremptory strike requires a three-step inquiry. First, the trial court must determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race. 476 U. S., at 96–97. Second, if the showing is made, the burden shifts to the prosecutor to present a race-neutral explanation for striking the juror in question. *Id.*, at 97–98. Although the prosecutor must

present a comprehensible reason, "[t]he second step of this process does not demand an explanation that is persuasive, or even plausible"; so long as the reason is not inherently discriminatory, it suffices.  *Purkett* v. *Elem,* 514 U. S. 765, 767–768 (1995) *(per curiam).*  Third, the court must then determine whether the defendant has carried his burden of proving purposeful discrimination.  *Batson*, *supra*, at 98; *Miller-El* v. *Dretke,* 545 U. S. ___, ___ (2005) (slip op., at 18).  This final step involves evaluating "the persuasiveness of the justification" proffered by the prosecutor, but "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Purkett*, *supra*, at 768.

On direct appeal in federal court, the credibility findings a trial court makes in a *Batson* inquiry are reviewed for clear error.  *Hernandez* v. *New York*, 500 U. S. 352, 364–366 (1991) (plurality opinion) (holding that evaluation of a prosecutor's credibility "lies 'peculiarly within a trial judge's province' ").  Under AEDPA, however, a federal habeas court must find the state-court conclusion "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U. S. C. §2254(d)(2).  Thus, a federal habeas court can only grant Collins' petition if it was unreasonable to credit the prosecutor's race-neutral explanations for the *Batson* challenge.  State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by "clear and convincing evidence." §2254(e)(1).  See *Miller-El, supra,* at ___ (slip op., at 6). Although the Ninth Circuit assumed §2254(e)(1)'s presumption applied in this case, 365 F. 3d, at 677, the parties disagree about whether and when it does.  We need not address that question.  Even assuming, *arguendo*, that only §2254(d)(2) applied in this proceeding, the state-court decision was not an unreasonable determination of the facts in light of the evidence presented in the state court.

Because the California Court of Appeal accepted the trial court's credibility finding, the panel majority inquired whether the appellate court made an unreasonable factual determination. See *id.*, at 682. The panel majority's analysis and conclusions, however, depended entirely on its view of the trial court's credibility holding. The panel majority found no error in the trial court's proceedings or rulings in the first two steps of the *Batson* inquiry. 365 F. 3d, at 677–678. It disagreed, however, with the trial court's conclusions on the third step, holding that it was unreasonable to accept the prosecutor's explanation that Juror 16 was excused on account of her youth and her demeanor. *Id.*, at 678–687. We conclude the Ninth Circuit erred, for the trial court's credibility determination was not unreasonable.

Noting that the trial court had not witnessed Juror 16's purported eye rolling, the panel majority concluded that no reasonable factfinder could have accepted the prosecutor's rendition of the alleged incident because the prosecutor's conduct completely undermined her credibility. *Id.*, at 683. Having before it only the trial court record, the Court of Appeals majority drew this conclusion based on three considerations: first, the prosecutor's erroneous statement concerning another prospective African-American juror's age; second, the prosecutor's improper attempt to use gender as a basis for exclusion; and third, the majority's skepticism toward the prosecutor's explanation that she struck Juror 16 in part because of her youth and lack of ties to the community. *Id.*, at 683–684.

The first reason the panel majority noted for rejecting the trial court's credibility finding pertained not to Juror 16, the subject of Collins' claim on appeal, but to another prospective African-American juror, Juror 19. The prosecutor referred to Juror 19 as "young" even though she was a grandmother. This reference to youth took place during a discussion about three prospective jurors, Jurors 6, 16,

and 19. Jurors 6 and 16 were both young. As Judge Hall observed, it is quite plausible that the prosecutor simply misspoke with respect to a juror's numerical designation, an error defense counsel may also have committed. *Id.*, at 688; 2 App. 9. It is a tenuous inference to say that an accidental reference with respect to one juror, Juror 19, undermines the prosecutor's credibility with respect to Juror 16. Seizing on what can plausibly be viewed as an innocent transposition makes little headway toward the conclusion that the prosecutor's explanation was clearly not credible.

Second, the panel majority concluded that the trial court should have questioned the prosecutor's credibility because of her "attempt to use gender as a race-neutral basis for excluding Jurors 016 and 019." 365 F. 3d, at 684. Respondent's trial occurred in August 1996, over two years after our decision in *J. E. B.* v. *Alabama ex rel. T. B.*, 511 U. S. 127 (1994), made clear that discrimination in jury selection on the basis of gender violates the Equal Protection Clause. Although the record contains a somewhat confusing colloquy on this point, it can be read as indicating that one of the prosecutor's aims in striking Juror 16 was achieving gender balance on the jury. Concerned about the constitutionality of such a strike, the trial court made clear that it would not accept gender as a race-neutral explanation. The panel majority assigned the gender justification more weight than it can bear. The prosecutor provided a number of other permissible and plausible race-neutral reasons, and Collins provides no argument why this portion of the colloquy demonstrates that a reasonable factfinder must conclude the prosecutor lied about the eye rolling and struck Juror 16 based on her race.

Finally, the panel majority believed to be unsupportable the prosecutor's stated concern that Juror 16 might, as a young and single citizen with no ties to the community, be

too tolerant of the crime with which respondent was charged. 365 F. 3d, at 680–682, 684. This was so, the majority concluded, because during *voir dire* Juror 16 replied affirmatively when asked if she believed the crime with which respondent was charged should be illegal and disclaimed any other reason she could not be impartial. *Id.*, at 680. That the prosecutor claimed to hold such concerns despite Juror 16's *voir dire* averments does not establish that she offered a pretext. It is not unreasonable to believe the prosecutor remained worried that a young person with few ties to the community might be less willing than an older, more permanent resident to impose a lengthy sentence for possessing a small amount of a controlled substance. Accord, *id.*, at 690 (Hall, J., dissenting). Even if the prosecutor was overly cautious in this regard, her wariness of the young and the rootless could be seen as race neutral, for she used a peremptory strike on a white male juror, Juror 6, with the same characteristics. 2 App. 5, 14.

Viewing the panel majority's concerns together, the most generous reading would suggest only that the trial court had reason to question the prosecutor's credibility regarding Juror 16's alleged improper demeanor. That does not, however, compel the conclusion that the trial court had no permissible alternative but to reject the prosecutor's race-neutral justifications and conclude Collins had shown a *Batson* violation. Reasonable minds reviewing the record might disagree about the prosecutor's credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination.

The panel majority did not stop at the conclusion that the trial court rendered an unreasonable factual determination in light of the evidence presented. It further concluded that the state courts had unreasonably applied clearly established federal law as determined by this Court. 365 F. 3d, at 679; 28 U. S. C. §2254(d)(1). The

question whether a state court errs in determining the facts is a different question from whether it errs in applying the law. In this case there is no demonstration that either the trial court or the California Court of Appeal acted contrary to clearly established federal law in recognizing and applying *Batson*'s burden-framework. See 2 App. 14–15; App. to Pet. for Cert. 114–116. The only question, as we have noted, is whether the trial court's factual determination at *Batson*'s third step was unreasonable. For the reasons discussed above, we conclude it was not.

## III

The panel majority's attempt to use a set of debatable inferences to set aside the conclusion reached by the state court does not satisfy AEDPA's requirements for granting a writ of habeas corpus. The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

———————

No. 04–52

———————

BERTRAM RICE, WARDEN, ET AL., PETITIONERS *v.*
STEVEN MARTELL COLLINS

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE NINTH CIRCUIT

[January 18, 2006]

JUSTICE BREYER, with whom JUSTICE SOUTER joins,
concurring.

Twenty years ago Justice Thurgood Marshall warned
that the test of *Batson* v. *Kentucky,* 476 U. S. 79 (1986),
would fail to ferret out unconstitutional discrimination in
the selection of jurors. *Id.*, at 102–103 (concurring opin-
ion) ("The decision today will not end the racial discrimi-
nation that peremptories inject into the jury-selection
process"). In my view, history has proved Justice Mar-
shall right. See *Miller-El* v. *Dretke,* 545 U. S. \_\_\_, \_\_\_
(2005) (slip op., at 1) (BREYER, J., concurring). And today's
case, like *Miller-El*, helps to illustrate *Batson*'s fundamen-
tal failings.

For one thing, the prosecutor's inability in this case to
provide a clear explanation of why she exercised her per-
emptory challenges may well reflect the more general fact
that the exercise of a peremptory challenge can rest upon
instinct not reason. Insofar as *Batson* asks prosecutors to
explain the unexplainable, how can it succeed? *Miller-El*,
545 U. S., at \_\_\_ (slip op., at 2–3) (BREYER, J., concurring).

For another thing, the trial judge's uncertainty about
the legal validity of the exercise of peremptory challenges
in this case may reflect the more general fact that, some-
times, no one, not even the lawyer herself, can be certain
whether a decision to exercise a peremptory challenge

rests upon an impermissible racial, religious, gender-based, or ethnic stereotype. *Ibid.* See also *Batson*, *supra*, at 106 (Marshall, J., concurring) (noting unconscious internalization of racial stereotypes). How can trial judges second-guess an instinctive judgment the underlying basis for which may be a form of stereotyping invisible even to the prosecutor? *Miller-El, supra*, at ___ (slip op., at 2) (BREYER, J., concurring).

Finally, the case before us makes clear that ordinary mechanisms of judicial review cannot assure *Batson*'s effectiveness. The reasons are structural. The trial judge is best placed to consider the factors that underlie credibility: demeanor, context, and atmosphere. And the trial judge is best placed to determine whether, in a borderline case, a prosecutor's hesitation or contradiction reflect (a) deception, or (b) the difficulty of providing a rational reason for an instinctive decision. Appellate judges cannot on the basis of a cold record easily second-guess a trial judge's decision about likely motivation. These circumstances mean that appellate courts will, and must, grant the trial courts considerable leeway in applying *Batson*. See *Hernandez* v. *New York,* 500 U. S. 352 (1991). As the present case illustrates, considerations of federalism require federal habeas courts to show yet further deference to state-court judgments. See 28 U. S. C. §2254(d)(2) (state-court factual determination must stand unless "unreasonable").

The upshot is an unresolvable tension between, on the one hand, what Blackstone called an inherently "'arbitrary and capricious'" peremptory challenge system, *Miller-El, supra*, at ___ (slip op., at 7) (BREYER, J., concurring) (quoting 4 W. Blackstone, Commentaries on the Laws of England 346 (1769)), and, on the other hand, the Constitution's nondiscrimination command. Given this constitutional tension, we may have to choose. *Miller-El, supra*, at ___ (slip op., at 8) (BREYER, J., concurring); *Swain* v. *Alabama,* 380 U. S. 202, 244 (1965) (Goldberg, J.,

dissenting) ("Were it necessary to make an absolute choice between the right of a defendant to have a jury chosen in conformity with the requirements of the Fourteenth Amendment and the right to challenge peremptorily, the Constitution compels a choice of the former"); *Batson, supra*, at 107 (Marshall, J., concurring) (same).

I have argued that legal life without peremptories is no longer unthinkable. *Miller-El, supra,* at \_\_\_ (slip op., at 6–7) (concurring opinion) (citing, *inter alia*, the experience of England). I continue to believe that we should reconsider *Batson*'s test and the peremptory challenge system as a whole. Nonetheless, because the Court correctly applies the present legal framework, I concur in its opinion.