OPINION
BERZON, Circuit Judge:
This is the latest case arising out of a jury selected by David Brown, a prosecutor with a history of unconstitutional race-based peremptory strikes. We previously held that Brown violated the Constitution’s Equal Protection Clause when he struck three African-American women from the jury of petitioner Aldridge Currie’s first trial. See Currie v. Adams, 149 Fed.Appx. 615 (9th Cir. 2005). At the retrial resulting from that opinion, the trial judge found that Brown had violated Batson again by striking three African-American prospective jurors.
This case arises out of Currie’s second retrial, in which Brown was the prosecutor once again. In this third attempt to prosecute Currie, Brown removed one African American juror via peremptory strike. His stated reasons for striking this juror were all flawed — each reason was either unreasonable, demonstrably false, or applied just as well to the non-black jurors Brown allowed to remain on the jury. Because “[t]he ‘Constitution forbids striking even a single prospective juror for a discriminatory purpose,’ ” Foster v. Chatman, 578 U.S. -, -, 136 S.Ct. 1737, 1747, 195 L.Ed.2d 1 (2016) (quoting Snyder v. Louisiana, 552 U.S. 472, 478, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008)), we hold that Cur-rie’s habeas petition should be granted.
I. Background
A. The Batson Framework
This case, like its predecessor cases involving Brown and Currie, centers around the proper application of the Supreme Court’s decision in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Batson held that the Fourteenth Amendment’s Equal Protection Clause prohibits prosecutors from using a peremptory challenge against a juror on the basis of that juror’s race. See id. at 89, 106 S.Ct. 1712. This prohibition is enforced via Batson’v: three-step process.
In the' first Batson step, “the defendant must make out a prima facie case by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose.” Johnson v. California, 545 U.S. 162, 168, 125 S.Ct. 2410, 162 L.Ed.2d 129 (2005) (citation and internal quotation marks omitted). Second, if that prima facie case is made out, the state must offer “permissible race-neutral justifications for the strike[].” Id. Third, the trial court must decide whether, given all of the relevant facts, the defendant has proven purposeful discrimination. See Crittenden v. Ayers, 624 F.3d 943, 958 (9th Cir. 2010).
At this third step, the defendant has the burden of proving purposeful discrimination by a preponderance of the evidence. See id. (citing Batson, 476 U.S. at 98, 106 S.Ct. 1712). The defendant need not prove that all of the prosecutor’s race-neutral reasons were pretextual, or even that the racial motivation was “determinative.” Snyder v. Louisiana, 552 U.S. at 485, 128 S.Ct. 1203 (citing Hunter v. Un *606 derwood, 471 U.S. 222, 228, 105 S.Ct. 1916, 85 L.Ed.2d 222 (1985)). Instead, to prove a Batson violation, the defendant must demonstrate that “race was a substantial motivating factor” in the prosecutor’s use of the peremptory strike. Cook v. LaMarque, 593 F.3d 810, 815 (9th Cir. 2010).
B. Prior Proceedings
On July 12, 1995, Currie and a man named Santos Maldonado got into an argument about a gun Maldonado had acquired from a mutual acquaintance. Later that day, while Maldonado and his girlfriend were sitting in Maldonado’s car, Currie approached Maldonado and asked how much methamphetamine he would sell Currie for $100.00. After Maldonado answered, Currie said that he had money around the corner and left. He returned and shot Maldonado in the neck, then robbed Maldonado of a gold chain, money, and methamphetamine. Maldonado later died due to his injury. Currie is African American, while Maldonado was of Hispanic descent.
Brown successfully prosecuted Currie in California Superior Court, obtaining Cur-rie’s conviction for second degree murder, attempted robbery, and being a felon in possession of a firearm. That conviction was affirmed on direct appeal, but we granted habeas relief after finding that Brown had exercised a peremptory challenge in violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Currie v. Adams, 149 Fed.Appx. 615 (9th Cir. 2005) (“Currie I”). Shortly before we ruled in that case, the Supreme Court held that Brown had committed a Batson violation in a separate case, Johnson v. California, 545 U.S. 162, 125 S.Ct. 2410, 162 L.Ed.2d 129 (2005).
The state retried Currie in May 2009, with a new judge presiding and Brown again serving as prosecutor. During voir dire, the judge declared a mistrial due to another Batson violation by Brown. The court commenced a second retrial with a new jury (again with Brown as the prosecutor). It is that second retrial at issue in today’s case.
C. Jury Selection
Currie’s Batson claim centers on the striking of a prospective juror named Jones, an African-American woman. Jones made it through the first round of jury selection, during which the court questioned and excused jurors for hardship. The court then described “the nature of the charges” to the jurors who remained, including Jones, and gave those jurors a pair of questionnaires to fill out. After the jurors had completed the questionnaires, they were read the Information against Currie and voir dire began.
During voir dire, Jones was questioned by both the court and Brown; defense counsel did not question her. The court asked Jones only two questions: whether her relationships with people who have used drugs would prevent her from keeping an open mind during the trial, and whether there was anything else the parties should know about her. Jones answered that she would be able to “keep an open mind,” and that there was nothing else the parties needed to know.
Brown’s questioning of Jones was slightly longer. The jury questionnaires had asked whether the fact that Currie had been arrested and “charged with these crimes” caused Jones to be “biased against him” or think he “is probably guilty of something.” Jones had answered “no” to each question, writing in the comments section to the question “no I don’t know what his [sic] is accused of and he is presumed not guilty until proven.” Following up on the questionnaire, Brown asked Jones on voir dire “how do you feel about *607 the presumption of innocence?” Jones replied “I can’t conclude that he’s guilty or not, because I don’t know the first thing of the case.”
Brown asked Jones several more questions about the presumption of innocence and the prosecutor’s burden, and then moved on to other jurors. Later, after asking other jurors about whether they were concerned about the substantial time that had passed since the acts underlying the charges against Currie, Brown briefly turned to Jones and asked “how about you with regards to the time issue? Does that concern you at all?” Jones responded “no.” There was no further questioning of Jones that day.
The next day, before the potential jurors had entered, Currie’s counsel noted that after the previous day’s dismissal of potential jurors for hardship and for cause, only two African-American potential jurors remained in the pool. Brown objected to the idea that defense counsel or the court could characterize individuals’ race based on their appearance, an argument he had made at several points during both of Cur-rie’s prior trials. The trial judge stated that he had not been keeping track and so was unable to arrive at his own estimate of the number of African-American potential jurors.
Before the court called in the panel of prospective jurors, Brown noted that there were two jurors that he “didn’t get a chance to ask questions of’ the previous day — Jones and another juror, Ms. Ruiz. Brown stated that there were some inconsistencies on Jones’s questionnaires that he “didn’t get a chance to go into,” and “those issues caused [him] some concern that [he] didn’t get a chance to voir dire on” due to the voir dire time limits. Brown referenced, in particular, question number 21 on the longer questionnaire and question number 10 on the shorter questionnaire.
Question 21 asked “[h]ave you, any member of your family or any close friend(s) ever been ARRESTED?” Jones had marked “yes,” and written “friends + family members (arrested for drug related issues.)” Question 10 asked “[h]ave you, a family or household member, or close friend been a victim, witness or defendant in a criminal matter?” Jones had marked “no.” Defense counsel stated that he had concerns about a third juror, Mr. Green-slade, and the court decided to conduct “limited supplemental questioning” of the three jurors.
The court asked Jones about her answers to questions 21 and 10, and Jones replied that her answers had been in reference to her brother and cousin. She said that her cousin “is no longer with us. And my brother was out of Alameda County about six years ago.” The court confirmed that she felt they had both been treated fairly, and then asked Jones if she thought either of those relationships would interfere with being objective in the present case. Jones replied “[n]o, not at all.” After that round of questioning, the prosecutor and defense counsel used their peremptory challenges to strike Ruiz and Greenslade, respectively, along with several other prospective jurors who had been seated that day.
The court proceeded with empaneling, questioning, and excusing jurors until Cur-rie’s counsel accepted the panel. At that point, Brown used a peremptory challenge to strike Jones from the panel. Currie’s counsel asked to approach the bench, the court cleared the courtroom, and Currie’s counsel moved for a mistrial under Batson.
The court noted that Jones was African-American, and that it was appropriate to consider Brown’s prior history of Batson violations for purposes of determining *608 whether there was a prima facie case of racial discrimination. Nonetheless, the court held that “a prima facie showing has not been made.” Before giving Brown a chance to proffer potential race-neutral reasons, the court proceeded, on its own, to volunteer a justification for Brown’s strike. It stated that although it had “no reason to disbelieve [Jones] that she believes that [her family members] were treated fairly and would not hold that against the People in the present case,” it did not “believe that the prosecutor is required to take the risk that either subconsciously or during the presentation of evidence her feelings may change in light of the very close relationship she has with two people who have been prosecuted.” The trial court concluded, by saying “it is a reasonable race neutral reason to strike anyone who has a close relative who has been prosecuted. So for that reason based on my observation of the facts, I don’t believe a prima facie case has been made.”
Having already provided what it regarded as an acceptable reason, the court then allowed Brown to articulate his reasons. Brown stated that “some of those reasons were exactly as stated by the court,” and then included Jones’s “no” answer to question 10; Jones’s statement on the questionnaire that she had family members who had used crack; that it was a particularly close relative who had been prosecuted; and Jones’s questionnaire comment that she didn’t know what the defendant was “accused of’ when the court had described the charges to the jurors before having them fill out the questionnaire. Currie’s counsel responded that Jones’s answers to questions 10 and 21 were not inconsistent if her family member had been arrested but not charged.
The court reiterated that it denied the motion at the prima facie case stage, and also stated that “the reasons provided are race neutral and are not a sham or a pretext, but are the actual reasons that Mr. Brown exercised the peremptory challenge.” It then continued the trial, which resulted in Currie’s conviction.[1]
D. Currie’s appeal in state court
Currie raised his Batson challenge on direct appeal in the California Court of Appeal. The Court of Appeal held that the state trial court had correctly applied the Johnson standard in its holding that there was no prima facie case under Batson. The court stated that “we will affirm the ruling where the record suggests grounds upon which the prosecutor might reasonably have challenged the jurors in question,” and found that “[substantial evidence supports the trial court’s stated conclusion that Juror J[ones] was not a desirable panelist for the prosecution because she had two relatives who had been arrested for drug offenses, and that consequently, no prima facie case had been made.”
The court said that it did not need to engage in comparative juror analysis, disagreeing with Currie that the trial court’s analysis of Brown’s stated reasons transformed the Batson analysis from stage one to stage three. It noted that, were it to treat the case as presenting a stage-three Batson analysis, it would affirm the trial court’s holding as based on substantial evidence anyway, as it would accord significant deference to the trial court’s factual findings were it to engage in a comparative *609 juror analysis. The court then did engage in a limited comparative analysis, examining only the seated jurors’ responses to questions regarding crime and drug use among their families and Mends. “Drug use did not appear to be nearly as pervasive in the social circles of the seated jurors,” the court found, and so Brown “could quite reasonably differentiate between [Jones’s] responses and those of the seated jurors.” The court affirmed the trial court’s rejection of Currie’s Batson claim. The Supreme Court denied Currie’s petition for review in a single-sentence disposition, citing no cases and giving no reasons for the denial.
E. Federal habeas proceedings
Currie filed a petition for a writ of habe-as corpus in the Northern District of California. The district court dismissed all but two of Currie’s claims as unexhausted, allowing Currie’s Batson claim and one other claim to move forward. Citing Hernandez v. New York, 500 U.S. 352, 359, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) (plurality opinion), the district court moved directly to the question whether Brown had engaged in purposeful discrimination under Batson step three. The court applied the deferential standard of 28 U.S.C. § 2254(d)(2), finding that the state court of appeal “was not objectively unreasonable in concluding that substantial evidence supported the trial court’s finding that the prosecutor did not excuse Juror [Jones] based on her race.” The court denied both of Currie’s claims for habeas relief, and certified only the Batson claim for appeal-ability.
II. The Standard of Review
 This Court reviews a district court’s legal determinations denying habe-as relief de novo. Crittenden, 624 F.3d at 950. Review of the challenged state court decision is governed by 28 U.S.C. § 2254, which accords a statutory presumption of correctness. Tolbert v. Page, 182 F.3d 677, 685 (9th Cir. 1999) (en banc).[2] For habeas petitions alleging a Batson violation, “our standard is doubly deferential: unless the state appellate court was objectively unreasonable in concluding that a trial court’s credibility determination was supported by substantial evidence, we must uphold it.” Jamerson v. Runnels, 713 F.3d 1218, 1225 (9th Cir. 2013) (quoting Briggs v. Grounds, 682 F.3d 1165, 1170 (9th Cir. 2012)).
This deference does not apply where the state court’s decision is contrary to or based on an unreasonable application of “clearly established Federal law.” 28 U.S.C. § 2254(d)(1); Panetti v. Quarterman, 551 U.S. 930, 948, 127 S.Ct. 2842, 168 L.Ed.2d 662 (2007). Here, the state appellate court violated clearly established Federal law in its Batson step one analysis by affirming because “the record suggested] grounds upon which the prosecutor might reasonably have challenged the jurors in question,” whether or not those were the reasons proferred. “[T]he existence of grounds upon which a prosecutor could reasonably have premised a challenge does not suffice to defeat an inference of racial bias at the first step of the Batson framework.” Johnson v. Finn, 665 F.3d 1063, 1069 (9th Cir. 2011) (emphasis added) (internal quotation marks omitted). That principle “was clearly established” for AEDPA purposes in 2005 — years before *610 Currie’s retrial — by the Supreme Court’s decision in Johnson v. California. Id. Johnson noted that “[t]he Batson framework is designed to produce actual answers to suspicions and inferences that discrimination may have infected the jury selection process,” 545 U.S. at 172, 125 S.Ct. 2410 (emphasis added), and quoted with approval our statement in Paulino v. Castro, 371 F.3d 1083, 1090 (9th Cir. 2004) that “[i]t does not matter that the prosecutor might have had good reasons ...[;] [w]hat matters is the real reason they were stricken.” Id.
The state appellate court proceeded, however, to engage in a Batson step-three analysis as an alternate ground for affirming the state trial court. Considering the state appellate court’s prior legal error, whether we should examine only this alternative holding and apply AEDPA deference, as the district court did, is a debatable question.[3] But it is a question we need not decide, for even examining the holding under AEDPA’s doubly deferential standard, we hold that the state court’s Batson step three analysis was “based on an unreasonable determination of the facts in light of the evidence presented.”[4] 28 U.S.C. § 2254(d)(2).[5]
III. Discussion
To determine, at stage three, whether a prosecutor’s professed race-neutral reasons for striking a juror were pre-textual, Batson requires an inquiry into “the totality of the relevant facts about a prosecutor’s conduct.” Kesser v. Cambra, 465 F.3d 351, 359 (9th Cir. 2006) (en banc) (quoting Miller-El v. Dretke, 545 U.S. 231, 239, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005)). Here, Brown’s history of Batson violations is one such relevant fact. In Miller-El v. Cockrell, 537 U.S. 322, 347, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003), the Supreme Court used the fact that prosecutors belonged to a district attorney’s office with a history of racial bias to bolster its finding of a prima facie case. In this in *611 stance, it is not only the same office, but the same prosecutor, who brings a history of Batson violations with him.
In addition, we find it troubling that Brown’s explanations for the strike were largely adopted from reasons the trial judge had already suggested, during his discussion of Batson step one. Ordinarily, we give significant deference to a trial judge’s assessment of a prosecuting attorney’s credibility. See Batson, 476 U.S. at 98 n. 21, 106 S.Ct. 1712. But where a trial court offers reasons before the prosecutor has spoken, it undermines the court’s ability to assess that credibility. First, where the prosecutor has been supplied with reasons, the court will have less opportunity to put him or her to the task of articulating his own reasons in his own words. When the prosecutor already knows that a reason will be accepted because the court itself has approved it, the court’s chance to perceive active dissembling because of an uncertain or unconvincing explanation diminishes. Second, where a trial judge has already suggested a given explanation, he or she may naturally subject that explanation to less scrutiny than when it is offered by someone else.
With these considerations in mind, we turn to the race-neutral reasons Brown provided to justify striking Jones. First, Brown noted that Jones had several relatives who had used drugs, including two particularly “close relation[s]” (a brother and cousin) who had been arrested for drug offenses. Second, Jones had given inconsistent statements regarding these family members on her questionnaire. Third, Jones said that she did not know what Currie was accused of, even though the charges had been read to her. The record refutes each of these explanations.
1. Jones’s family members
Jones marked “yes” to the question “[h]ave you, anyone in your family, any close friends, co-workers, or other contact had a drug problem?” She explained that “several family members have [sic] crack before.” The questionnaire asked how this problem had affected her and others, and Jones wrote “it made me value life and the beautiful things it has to offer me. Because I grew up around it, I know what not to do. I choice [sic] to make the right choices.” In an earlier question about her feelings and attitudes regarding illegal drugs, Jones remarked “to each his own. It’s very sad to see people go through rough times with drug use, but it is their own choice. They are still human even given their struggles.”
The state appeals court relied heavily on Jones’s statements about her family members in rejecting Currie’s Batson claim; it was the only one of Brown’s reasons that the court discussed during its comparative juror analysis. The appeals court found that Jones’s
situation was different [from the other potential jurors], in that she had “several” family members who had a problem with crack cocaine, and a very close family member (a brother) who had been arrested for a drug related offense. She also stated in her questionnaire that she had ‘friends’ who had been arrested for the same reason. Drug use did not appear to be nearly as pervasive in the social circles of the seated jurors, and the prosecutor could quite reasonably differentiate between her responses and those of the seated jurors.
The appeals court’s conclusion is unreasonable in light of the evidence before it. Juror 35, in particular, had personally struggled "with marijuana, cocaine, and methamphetamine to such an extent that he suffered “multiple gran mal seizures” and “did not drive for appx 6 years.” Regarding his “feelings and attitudes about *612 the use of illegal drugs,” he put only one word — “empathetic.” Despite these statements, Juror 35 was seated. The state appeals court minimized this juror’s vivid description of his experience, saying only that he “had tried drugs when he was in his twenties.” The seating of Juror 35 severely undercuts Brown’s rationale, relied on by both the state appeals court and state trial court, that Jones was struck because of the closeness of her relationship with a drug user.
Moreover, the more general finding that “[djrug use did not appear to be nearly as pervasive in the social circles of the seated jurors” is an unreasonable determination of the facts, given that half of the seated jurors had relatives with drug problems and that several of those jurors listed multiple individuals in their lives who had had very serious drug issues: a sister-in-law who left her husband due to drugs; a nephew’s wife who “died from drug abuse;” an alcoholic mother; a cousin addicted to cocaine for many years; a niece who is “in and out of drug rehab”; and a niece with a drug problem who “is mentally ill today.” Some of these seated jurors, like Juror 35, made explicit statements of sympathy for those who used illegal drugs. The seating of all these jurors further undermines the plausibility of the notion that Brown was particularly concerned about seating jurors who might be sympathetic to a defendant whose crime involved purchasing drugs.
2. Jones’s allegedly inconsistent statements about her family members.
Jones’s questionnaire asked whether she, “a family or household member, or close friend [had] been a victim, witness or defendant in a criminal matter.” Jones answered “no.” Her answer to another question, however, indicated that she had friends and family members who had been arrested.
The state court held this supposed inconsistency a legitimate race-neutral reason. But these answers are not necessarily inconsistent. If Jones’s family member had been arrested but not charged with a crime, for instance, these two answers would be wholly compatible. The questionnaire even covers this possibility, asking not only whether a Mend or family member had been arrested but also whether charges were filed. Jones clearly marked “no” to this second question. Nothing in the voir dire testimony shows that these answers were false or could reasonably have been viewed as inconsistent.[6]
More importantly, comparative juror analysis strongly suggests this concern was pretextual. Five of the non-black panelists who ended up being sworn jurors displayed the same pattern in answering these two questions. Hence, the “prosecutor’s proffered reason for striking a black panelist applies just as well” to these non-black panelists. Miller-El v. Dretke, 545 U.S. at 241, 125 S.Ct. 2317. Although this pattern in the answers of the non-black panelists was in the record, neither the district court nor the state court mentioned them.
3. Jones’s statement that she did not know what Currie was accused of
Brown also said he struck Jones because she stated on her questionnaire that she *613 didn’t know what Currie “is accused of,” even though the trial judge had informed the potential jurors of the charges. But Jones’s statement that she didn’t know what Currie “is accused of’ is unremarkable even in light of the trial court’s instructions.
The trial court told the prospective jurors the formal charges — “second degree murder, attempted robbery and felon in possession of a firearm.” It did not go into any detail at all about what Currie was alleged to have done — who he allegedly robbed or murdered, or where, why, or how he .did so. And, when it announced the charges, the court specifically admonished the jurors that they should not talk about the case with other people, “even though you don’t know anything about it.”
After the trial court had made such a statement, and in the context of a question about the presumption of innocence, Jones’s statement “I don’t know what [he] is accused of’ was entirely innocuous. Jones did not know any of the specific factual allegations involved. It would be natural and coherent for a person to say, for instance, “I know the defendant is charged with mail fraud, but for all I know he could be accused of lying to his mother or of running an international pyramid scheme.” “Accuse” and “charge” may be synonymous in a technical sense, but this does not mean that Jones’s statement, in context, would reasonably cause anyone to doubt her competence or lack of bias. Brown, moreover, had an opportunity to ask Jones about this inconsistency during voir dire, when Jones stated that she didn’t “know the first thing of the case.” But he did not. Such a “failure to engage in any meaningful voir dire examination on a subject the State alleges it is concerned about is evidence suggesting that the explanation is a sham and a pretext for discrimination.” Miller-El v. Dretke, 545 U.S. at 246, 125 S.Ct. 2317 (quoting Ex parte Travis, 776 So.2d 874, 881 (Ala. 2000)). We therefore conclude that it was unreasonable for the state court to accept this reason as a valid race-neutral explanation for Jones’s removal.
In sum, the record contains clear indications that each of Brown’s reasons for striking Juror Jones was a pretext, and it was unreasonable for the state court to hold otherwise. The state court unreasonably downplayed a seated juror’s personal experience with drugs and the many other jurors who had ties to individuals with tragic drug-related experiences. Jones’s alleged inconsistency in two questionnaire questions was not, in fact, an inconsistency at all, and five of the seated jurors had answered the questionnaire identically. And Jones’s statement that she did not know what Currie was accused of is entirely understandable and not reasonable grounds to doubt her abilities as a juror.
Even if the state appeals court had not erred in its acceptance of one of these reasons, it unreasonably determined the facts by analyzing only one of Brown’s justifications — that Jones had close relatives who had used drugs — for pretext. A court does not need to find all of a prosecutor’s race-neutral reasons pretextual to find impermissible racial discrimination. See Kesser, 465 F.3d at 360. The relevant inquiry for Batson purposes is whether “race was a substantial motivating factor.” Cook, 593 F.3d at 815; see also Snyder, 552 U.S. at 485, 128 S.Ct. 1203. If a prosecutor supplies enough reasons for a strike, it may well be likely 'that one of those reasons is plausible. But it remains the case that implausible justifications “may (and probably will) be found to be pretexts for purposeful discrimination.” Miller-El v. Cockrell, 537 U.S. at 339, 123 S.Ct. 1029 *614 (quoting Purkett v. Elem, 514 U.S. 765, 768, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995)). Courts applying the Batson procedure therefore cannot stop investigating after finding one of a prosecutor’s multiple proferred reasons plausible. As is evident here, finding multiple other reasons to be pretextual may well lead to the conclusion that the prosecutor’s strike was discriminatory.[7]
IV. Conclusion
Brown’s history of Batson violations and pretextual reasons in this case lead us to conclude that “race was a substantial motivating factor” for his strike of Jones. Cook, 593 F.3d at 815. The California Court of Appeal’s rejection of Currie’s Batson claim was based on an unreasonable determination of the facts, as it largely ignored the similar extent of drug use in Jones’s social circles and those of the empaneled jurors, and it uncritically accepted Brown’s other stated reasons. We therefore conclude that the district court erred in rejecting Currie’s habeas petition. We reverse, and remand with instructions to issue a conditional writ of habeas corpus requiring Currie’s release from custody unless the State elects to retry Currie within a reasonable time period to be determined by the district court.
REVERSED and REMANDED.

. After conviction, Currie moved for a new trial based on the claimed Batson violation as well as other claims. The court denied the motion, reaffirming that "no prima facie case had been shown.” The court reiterated its reasons for that finding and added new reasons not suggested by Brown; the state appellate court did not rely on these reasons or even mention them. We therefore do not discuss those reasons here.

. The district court correctly chose the last reasoned state court decision as the decision to review — in this case, the California Court of Appeal’s decision. Ylst v. Nunnemaker, 501 U.S. 797, 805, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991); Shackleford v. Hubbard, 234 F.3d 1072, 1079 n. 2 (9th Cir. 2000).

.The district court justified moving directly to the Batson step three analysis by citing Hernandez v. New York, 500 U.S. 352, 359, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) (plurality opinion), which states that the issue of a prima facie showing is moot once the prosecutor's race-neutral explanation is in the record. It is not clear, however, that Hernandez applies here. In Hernandez, the prosecutor responded to a Batson motion by defending his peremptory strike "without any prompting or inquiry from the trial court.” Id. Here, in contrast, the state trial court initially provided potential reasons that the prosecutor then adopted. But the Supreme Court has clearly stated that the goal of the Batson procedure is to uncover "the reasons the prosecutor actually harbored for a peremptory strike.” Johnson v. California, 545 U.S. at 172, 125 S.Ct. 2410 (emphasis added) (citation and internal quotation marks omitted). The fact that the prosecutor’s stated reasons were supplied in large part by the court itself means that applying Hernandez here would be in considerable tension with Johnson v. California.

. The Supreme Court has declined to decide whether § 2254(d)(2) applies when considering a third-stage Batson claim under AEDPA, or whether § 2254(e)(l)’s “clear and convincing evidence” standard applies. See Rice v. Collins, 546 U.S. 333, 338-39, 126 S.Ct. 969, 163 L.Ed.2d 824 (2006); Murray v. Schriro, 745 F.3d 984, 1001 (9th Cir. 2014) (collecting cases). This Court has previously decided to apply 2254(d)(2) where, as here, the relevant evidence is entirely in the record. See Ali v. Hickman, 584 F.3d 1174, 1180 n. 4 (9th Cir. 2009). That is the approach we take here.

. We disagree with the dissent's assertion that it was not clearly established Supreme Court law that courts cannot excuse a potential Bat-son violation based on hypothetical justifications on which a prosecutor could have premised a challenge. See Johnson, 545 U.S. at 172, 125 S.Ct. 2410; Finn, 665 F.3d at 1069. But even if the dissent is correct as to Johnson and Finn, because we have conducted our' analysis under AEDPA's doubly deferential standard, the outcome of the case would be unaffected.

. During voir dire when the judge asked Jones about "your family members who have been in the criminal justice system,” Jones stated that "my brother was out of Alameda County about six years ago.” It would be possible to interpret that statement to mean that Jones's brother was incarcerated in Alameda County at some point. But that does not mean that he was charged with or convicted of a crime; he could have been in detention at an Alameda County jail after an arrest.

. It is also for this reason, among others, that we are unpersuaded by the dissent. The dissent emphasizes a single reason for striking Jones — her family members with a history of drug-related arrests — and, finding it plausible, overlooks the rest of the troubling evidence in the record.