**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

MAY 13 2019

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

KIRK SAINTCALLE,

               Petitioner-Appellant,

  v.

JEFFREY A. UTTECHT, Warden,

               Respondent-Appellee.

No.   18-35107

D.C. No. 2:15-cv-00156-BJR

MEMORANDUM[*]

Appeal from the United States District Court
for the Western District of Washington
Barbara Jacobs Rothstein, District Judge, Presiding

Argued and Submitted March 6, 2019
Seattle, Washington

Before: GOULD and PAEZ, Circuit Judges, and PREGERSON,[**] District Judge.

Petitioner-Appellant Kirk Saintcalle challenges his state court convictions

for first-degree murder and second-degree assault on the ground that, under *Batson*

*v. Kentucky*, 476 U.S. 79 (1986), the State's peremptory strike of the only African-

American member of the venire—Juror No. 34—violated his Fourteenth

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The Honorable Dean D. Pregerson, United States District Judge for the Central District of California, sitting by designation.

Amendment right to equal protection. The district court denied Saintcalle's petition for a writ of habeas corpus. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253, and we affirm.

1.    Saintcalle first contends that the Washington State Supreme Court's decision affirming his conviction "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). He contends that the Washington State Supreme Court required him to show that the State's peremptory strike of Juror No. 34 was motivated by racism, whereas *Batson* and its progeny require a showing of "purposeful discrimination," 476 U.S. at 93–98.

The Washington State Supreme Court's decision was not contrary to *Batson*. The court correctly explained that Saintcalle had to show purposeful discrimination to establish a *Batson* claim, *State v. Saintcalle*, 309 P.3d 326, 333 (Wash. 2013), *abrogated on other grounds by City of Seattle v. Erickson*, 398 P.3d 1124 (Wash. 2017), and the court applied that standard, holding that "the trial court's finding that there was not purposeful discrimination was not clear error," *id.* at 339. The parts of the Washington State Supreme Court's opinion discussing both the governing law and its application do not impose any requirement that Saintcalle show racism.

Instead, Saintcalle relies on portions of the Washington State Supreme

Court's opinion where the court pondered possible shortcomings of *Batson* and considered whether to adopt a different standard under Washington law. The passages Saintcalle relies on, however, do not equate racism with purposeful discrimination or hold that a party must show racism under *Batson*. Those passages muse that "trial courts" may "interpret" or "understand" "purposeful discrimination" to mean "conscious discrimination," which could in turn "require[] judges to accuse attorneys of deceit and racism . . . ." *Saintcalle*, 309 P.3d at 336, 338. But there is no indication that the Washington State Supreme Court shared that interpretation or understanding. To the contrary, its rationale shows that the court did not do so. In a footnote, the Washington State Supreme Court noted that the argument that "purposeful discrimination" includes "unconscious bias," as opposed to just "conscious bias," "makes sense." *Id.* at 338 n.8. The court then explained that "the trial court easily could have understood 'purposeful discrimination' to include unconscious bias, and the facts of the case simply do not *compel* a finding of purposeful discrimination even if considering unconscious discrimination." *Id.* at 338 n.8.

AEDPA "demands" that the Washington State Supreme Court's "decision[] be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam). We hold that its decision was not "contrary to . . . clearly established Federal law." 28 U.S.C. § 2254(d)(1).

3

**2.**     Saintcalle next contends that even if the Washington State Supreme Court's decision was not contrary to *Batson*, its finding that the State did not purposefully discriminate against Juror No. 34 was an "unreasonable determination of the facts." 28 U.S.C. § 2254(d)(2). We disagree.

After Saintcalle raised a *Batson* challenge in the trial court to the State's peremptory strike of Juror No. 34, the State explained that it was concerned that the evidence in the case would "overwhelm[]" Juror No. 34, because one of her friends had recently been murdered, and that she would be lost as a juror. The trial court found that this explanation was a sufficient, race-neutral reason to strike Juror No. 34, and it denied Saintcalle's *Batson* challenge. The Washington State Supreme Court affirmed. *Saintcalle*, 309 P.3d at 339. It explained that "[i]n light of [Juror No. 34's] statements throughout voir dire, we defer to the trial court's factual finding that the prosecutor was justified in believing there was a realistic possibility that she might have been 'lost' as a juror before the end of the case." *Id.* at 340.

The state courts' findings are supported by the record. During voir dire, Juror No. 34 stated that sitting on the panel was "hard" and "difficult" for her, and that she did not "want to be a part of th[e] jury," because her friend had been murdered two weeks before. Juror No. 34 stated that she thought she could be fair to both sides and that she thought she had a duty to serve on the jury and be fair.

4

But she ultimately explained that she did not know how she would react to the evidence: "I mean, I have never been in this situation where I have lost someone. You just went to the funeral. He is young. Only 24. And to be called to jury duty to perhaps be on a jury of a murder suspect. I don't know how I'm going to react." Given this testimony, it was reasonable to fear that Juror No. 34 would not last through trial; she had just lost a friend and the trial was going to involve graphic evidence. This is a race-neutral reason for striking her and we cannot say that the Washington State Supreme Court unreasonably determined the facts in light of the record. *See Miller-El v. Dretke*, 545 U.S. 231, 265 (2005); *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004), *overruled on other grounds by Murray v. Schriro*, 745 F.3d 984, 999–1000 (9th Cir. 2014).

Moreover, as the Washington State Supreme Court pointed out, "[t]he trial court observed the juror and agreed that she was having difficulties." *Saintcalle*, 309 P.3d at 340. "[D]eterminations of . . . demeanor lie peculiarly within a trial judge's province." *Snyder v. Louisiana*, 552 U.S. 472, 477 (2008) (quotation omitted).

The dissent contends that the State should have struck another juror—Juror No. 24—if it was concerned about losing jurors during trial, and the State's failure to do so is evidence of pretext. Juror No. 24 and Juror No. 34, however, were not similarly situated. Juror No. 24 testified that it would be "hard" to disregard

5

information the court instructed jurors to disregard, but the juror later clarified that the juror "would follow the [court's] instructions" on the matter. Juror No. 34, in contrast, testified that she did not know how she was "going to react" emotionally during trial given her friend's recent death. The similarities between these jurors are insufficient to find pretext. *See Miller-El*, 545 U.S. at 245; *Castellanos v. Small*, 766 F.3d 1137, 1149 (9th Cir. 2014).

The dissent next contends that the State was "explicit about race playing a role in striking Juror No. 34." It cites the State's statement that "the race of the victim in this case is the same race as [Juror No. 34's] friend." But the overall point of the argument being made—of which the statement was a small part—was that photographs of the crime could be particularly disturbing to Juror No. 34.

Saintcalle contends that the State's stated fear that it might lose Juror No. 34 during trial was "baseless and contradicted" by Juror No. 34's own statements that she "considered it her duty to serve on a jury and was willing to do so despite how it would affect her emotionally." The dissent similarly contends that the State's "explanation that the evidence might overwhelm Juror No. 34 mischaracterizes her own testimony." Although Juror No. 34 acknowledged that she felt she had a duty to serve on the jury and be fair, she ultimately testified that she did not know how she would react to the evidence. The State's concern that Juror No. 34 would be too emotionally affected to proceed through trial was not "baseless," and the State

6

did not mischaracterize her testimony.

Saintcalle and the dissent next contend that Juror No. 34 was questioned much more than other jurors. That is indisputable. But Juror No. 34 did not give a concrete answer when repeatedly asked whether she could handle a murder trial in light of her friend's recent murder. The State and the trial court gave Juror No. 34 time to think about the question twice, and the State came back to her twice trying to get a clear answer. While the State's repeated questioning of Juror No. 34 could show discrimination, it could also show that the State sought an answer to its questions.

Saintcalle and the dissent finally contend that it is probative that the trial court sustained a *Batson* challenge to the State's attempt to strike the only other non-white member of the venire, a Mexican-American juror. We agree. But "all of the circumstances that bear upon the issue of racial animosity must be consulted." *Snyder*, 552 U.S. at 478. Those circumstances do not clearly show that the State purposefully discriminated against Juror. No. 34.

The record supports the State's race-neutral stated reason for striking Juror No. 34, which was a concern she would not last through trial. Although some evidence weighs against the State's stated reason, that evidence is not so "powerful," *Miller-El*, 545 U.S. at 265, that the Washington State Supreme Court "could not reasonably conclude," *Taylor*, 366 F.3d at 1000, in light of the record,

7

that the State struck Juror No. 34 for a race-neutral reason.

**AFFIRMED.**

*Saintcalle v. Uttecht*, No. 18-35107

PAEZ, Circuit Judge, dissenting:

I agree with the majority that the Washington State Supreme Court applied the "purposeful discrimination" standard required by *Batson*. I disagree, however, with my colleagues and would hold that the Washington State Supreme Court's conclusion that the prosecutor did not purposefully discriminate against Juror No. 34 was an "unreasonable determination of the facts." 28 U.S.C. § 2254(d)(2).

First, the prosecutor's fear of losing Juror No. 34 during trial was both misplaced and, as seen by a comparative juror analysis, pretextual. *See Castellanos v. Small*, 766 F.3d 1137, 1148 (9th Cir. 2014) ("Where, as here, the trial court did not undertake a formal comparative juror analysis in the first instance, [this court] must do so on collateral review."). During voir dire the prosecutor asked some other prospective jurors, Juror Nos. 24 and 27, whether, if they were seated on the jury and reached a point where they could not be fair, they could communicate that with the court. When asking those questions, the prosecutor explicitly referenced that alternates might be seated and able to fill in for a juror who could not finish the trial. The prosecutor did not strike any of those jurors, and at least one of them—Juror No. 24—was seated. Yet the prosecutor allegedly struck Juror No. 34 for fear of losing her during trial. Had the prosecutor

1

actually been concerned about losing jurors, the prosecutor would also have struck Jurors No. 24. The prosecutor's failure to do so is evidence of pretext.

Second, in my view, the prosecutor's explanation that the evidence might overwhelm Juror No. 34 mischaracterizes her own testimony. *See Miller-El v. Dretke*, 545 U.S. 231, 244 (2005) (noting the prosecutor mischaracterized the testimony of the black jurors he struck with discriminatory intent). In response to the prosecutor's questions, Juror No. 34 emphasized a belief that she could be fair, that she is exactly the type of person "who could be honest and look through all the facts," and that she is "not an emotional person." When the prosecutor asked if any jurors had "concerns about visualizing" violence, autopsy evidence, and crime scene photographs, Juror No. 34 did not respond affirmatively. Later, while many potential jurors expressed fear about serving as a juror for a murder trial, Juror No. 34 was not one of them.

Third, the prosecutor's allegedly race-neutral explanation was the product of disparate questioning. *See id.* (noting that non-black jurors who expressed similar views to a black juror were not questioned further or struck). Juror No. 34 was questioned more than any other potential juror. Contrary to what the majority says, the prosecutor does not appear to have repeatedly questioned Juror No. 34 because she did not answer the prosecutor's questions, but because she was not providing the answer the prosecutor wanted to hear—one that would support striking the only

2

African American juror in the venire. *Id.* at 255 (recognizing purposeful discrimination where prosecutors disparately questioned a potential juror in order "to elicit plausibly neutral grounds for a peremptory strike").

Fourth, the prosecutor's discriminatory peremptory strike of another juror in the instant case makes it more likely that the peremptory strike of Juror No. 34 was discriminatory. *See Currie v. McDowell*, 825 F.3d 603, 610 (9th Cir. 2016). The trial court granted Saintcalle's *Batson* challenge when the prosecutor tried to strike a Mexican American juror, which is evidence of discrimination against others. *See id.*

Finally, I note that the prosecutor was explicit about race playing a role in striking Juror No. 34. The prosecutor's extensive questioning of Juror No. 34 only began when she pointed out that she was one of the only non-white members in the venire. Later, when providing a rationale for the peremptory strike, the prosecutor relied upon race, explaining that Juror No. 34 might be emotionally overcome because her recently-deceased friend was the same race as the victim in the instant case.

This is a close case. The prosecutor's disparate questioning of Juror No. 34 and a comparative juror analysis, however, show that the prosecutor's proffered rationale was pretext for a discriminatory strike. I respectfully dissent.